**STATE FARM FIRE & CASUALTY COMPANY, Plaintiff–Appellee,**

v.

**Robert Ray MHOON, Defendant–Appellant,**

**Takura Fujiwara, and Melinda Isabel Fujiwara, Defendants.**

**No. 93–2103.**

United States Court of Appeals, Tenth Circuit.

Aug. 1, 1994.

---

erts & Weiss, P.A., Albuquerque, NM, for plaintiff-appellee.

Before WHITE, Associate Justice (Ret.); * TACHA, and BRORBY, Circuit Judges.

WHITE, Associate Justice (Ret.).

State Farm Fire & Casualty Company sought and received in federal district court a declaration that it had no obligation to insure or defend Robert Mhoon, one of its policyholders, in a state tort action. We are now called upon to review the district court's decision to exercise jurisdiction over State Farm's claim, and its ultimate disposition of that claim on the merits. We do so and affirm.

I

Robert Mhoon and Takuro Fujiwara were neighbors. On February 16, 1990, an afternoon conversation between the pair in Mhoon's garage erupted into an argument. The argument itself escalated into physical confrontation when Mhoon grabbed a metal bar and tried to strike Fujiwara with it. Fujiwara managed to wrestle the bar away, but Mhoon then ran into an adjoining garage, unlocked a car he had parked there, reached underneath a note pad and tissue box in the car's console, and retrieved a gun he had secreted in that spot. The gun was unloaded so Mhoon grabbed a magazine of bullets also stored in the console and inserted it into the gun. Mhoon then went looking for Fujiwara. Finding him walking outside, Mhoon pointed the gun at Fujiwara's head, "kicked the slide" to make a warning sound, shot twice in Fujiwara's direction, and hit him once.

The Fujiwara shooting gave rise to three separate legal actions, including the one now before us on appeal. First, Mhoon was criminally charged in New Mexico state court with aggravated battery. Though Mhoon contended he had shot Fujiwara only in self defense, the jury was unimpressed and returned a guilty verdict on February 25, 1991.[1] Secondly, while the criminal action

---

James T. Roach, Albuquerque, NM, for defendant-appellant.

Cynthia Braun Greenwell (Randal W. Roberts with her on the brief), of Simone, Rob-

* The Honorable Byron R. White, Associate Justice of the United States Supreme Court, (Ret.), sitting by designation, pursuant to 28 U.S.C. § 294(a).

1. The conviction was affirmed on October 6, 1992.

**982**

was pending, Fujiwara and his wife, Melinda, filed a civil action in state court on November 2, 1990. Their complaint alleged primarily that Mhoon had committed a number of intentional torts against the couple. State Farm, Mhoon's insurer under a homeowner's policy, agreed to defend him against the Fujiwaras, but only under a reservation of rights which left State Farm free to seek a judicial determination of its contractual obligations to Mhoon.

On June 12, 1991, State Farm exercised its reserved rights and filed this, the third action to arise out of the Fujiwara shooting, in federal district court. The company named Mhoon and the Fujiwaras as joint defendants and asked the court to exercise jurisdiction under the Declaratory Judgment Act, 28 U.S.C. § 2201,[2] and declare that, under its policy with Mhoon, it owed him neither a duty to defend the Fujiwaras' action nor to pay any adverse judgment entered against Mhoon in that action. Specifically, State Farm contended that Mhoon shot Fujiwara intentionally and that its homeowner's policy with Mhoon covered only accidental, not intentional harms that he might commit.

Though the state tort suit between Mhoon and Fujiwara was still in progress at the time, the federal district judge agreed to hear State Farm's declaratory action. He also entertained arguments on the merits and, on March 4, 1993, entered summary judgment in State Farm's favor. The judge ruled as a matter of law that Mhoon had intentionally shot Fujiwara and that, under the terms of the homeowner policy, such behavior was not covered and gave rise to no

duty to defend. Mhoon then filed this appeal.[3]

After briefs were entered in this appeal, the state tort action came to a conclusion. On September 7, 1993 the jury awarded the Fujiwaras a substantial sum for harm done by Mhoon's "intentional" act; Mhoon has informed this court that he will not appeal that judgment.[4]

**II**

On appeal before us now, Mhoon argues that the district court should not have accepted jurisdiction over State Farm's claim. More precisely, he does not suggest that the trial court lacked subject matter jurisdiction over this diversity action. Rather, he contends only that the Declaratory Judgment Act provides the district court with the discretion to refuse to hear an otherwise justiciable declaratory action and that, given the nature and setting of State Farm's claim, the district court ought to have employed that discretion to dismiss this matter.

Appellant is, of course, correct that the district court is not obliged to entertain every justiciable declaratory claim brought before it. The Supreme Court has long made clear that the Declaratory Judgment Act "gave the federal courts competence to make a declaration of rights; it did not impose a duty to do so." *Public Affairs Associates, Inc. v. Rickover,* 369 U.S. 111, 112, 82 S.Ct. 580, 581, 7 L.Ed.2d 604 (1962). *See also Brillhart v. Excess Ins. Co.,* 316 U.S. 491, 494, 62 S.Ct. 1173, 1175, 86 L.Ed. 1620

2. Section 2201(a) states that "[i]n a case of actual controversy within its jurisdiction ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such."

3. Mhoon represents before us that he is "joined" by the Fujiwaras, his codefendants in the district court, on appeal. *See* Appellant's Opening Brief at 2. The Fujiwaras, however, never filed a joint notice of appeal with Mhoon, nor did they file separate timely notices of appeal themselves. Consequently, under the plain terms of FED. R.APP.P. 3(b), they are not appellants in this case.

4. Although the state court issued a damages judgment against Mhoon based on his intentional conduct after briefing in this appeal, this hardly renders the present controversy moot. State Farm clearly wishes the district court affirmed as its ruling frees the company from any financial obligations to Mhoon or the Fujiwaras. Appellant also desires to have this appeal decided despite the state court judgment. He apparently believes that it would advantage him if we were to agree that the district court should not have entertained the declaratory judgment action at all or that it erroneously ruled on the summary judgment motion.

(1942). This circuit has provided trial courts in its bailiwick with substantial guidance on this score, instructing them to weigh two questions originally supplied by Professor Borchard: Will a declaration of rights, under the circumstances, serve to clarify or settle legal relations in issue? Will it terminate or afford relief from the uncertainty giving rise to the proceeding? If an affirmative answer can be had to both questions, the trial court should hear the case; if not, it should decline to do so. *See, e.g., Delaney v. Carter Oil Co.,* 174 F.2d 314, 317 (10th Cir.), *cert. denied,* 338 U.S. 824, 70 S.Ct. 71, 94 L.Ed. 501 (1949) (citing E. Borchard, *Declaratory Judgments* 299 (2d ed. 1941)); *Kunkel v. Continental Cas. Co.,* 866 F.2d 1269 (10th Cir.1989) (same).[5] As noted approvingly by this court in *Kunkel,* 866 F.2d at 1275 n. 4, however, the Sixth Circuit has recently suggested that a trial judge should weigh an expanded list of factors when deciding whether or not to hear a declaratory action. According to that court, he should ask

> [1] whether a declaratory action would settle the controversy; [2] whether it would serve a useful purpose in clarifying the legal relations at issue; [3] whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race to *res judicata*"; [4] whether use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and [5] whether there is an alternative remedy which is better or more effective.

*Allstate Ins. Co. v. Green,* 825 F.2d 1061, 1063 (6th Cir.1987).

■ While imposing on the trial court the obligation to weigh these various factors when deciding whether to hear a declaratory judgment action, this circuit has repeatedly over the years held that on appeal it will not engage in a *de novo* review of all the various fact-intensive and highly discretionary factors involved. Instead, it will only ask whether the trial court's assessment of them was so unsatisfactory as to amount to an abuse of discretion. *See, e.g., Duggins v. Hunt,* 323 F.2d 746 (10th Cir.1963); *Kunkel,* 866 F.2d at 1273.[6]

■ Appellant submits that the district court abused its discretion when it decided to hear this controversy. He insists that when the court took the case "[t]he State Court proceeding [had] not yet determined whether the act [was] intentional or not. Therefore, the U.S. District Court ... put [itself] in the position of dictating to the State Court that the act [was] intentional or making the statement that regardless of the factual determination in State Court, the federal court makes its own determination on the issue.... Mhoon contends those factual issues should be determined by State Court, not by Federal Court." Paraphrasing, appellant is concerned that the district court's intercession added to the uncertainty about the parties' positions and raised serious federal-state court comity problems. The critical question whether Mhoon acted intentionally was before both the state and federal courts simultaneously and the federal court's failure to await the state court's resolution of the issue opened the possibility that the state court would be foreclosed from deciding that Mhoon behaved only negligently and was, thus, entitled to be insured and defended.

We do not, however, see any abuse of discretion in the trial court's decision to hear this case. Leading us to our conclusion is

---

**5.** Many other circuits have recommended these same guidelines to trial courts within their jurisdictions. *See* 10A C. Wright, A. Miller, M. Kane, *Federal Practice and Procedure* § 2759 at 647 n. 5 (2d ed. 1983) (compiling circuit cases referencing Borchard's test).

**6.** Some other circuits apply this same standard of review, *see, e.g., Mission Insurance Co. v. Puritan Fashions Corp.,* 706 F.2d 599, 601 (5th Cir. 1983); *Aetna Casualty Co. v. Quarles,* 92 F.2d 321, 325 (4th Cir.1937), while a number have opted for a stricter review of the trial court's discretionary decision, *see, e.g., Tempco Elec. Heater Corp. v. Omega Engineering,* 819 F.2d 746, 747–748 (7th Cir.1987); *Broadview Chemical Corp. v. Loctite Corp.,* 417 F.2d 998, 1000 n. 3 (2d Cir.1969); *Hanes Corp. v. Millard,* 531 F.2d 585 (D.C.Cir.1976); *Exxon Corp. v. FTC,* 588 F.2d 895, 900 (3d Cir.1978). We need not much concern ourselves with this simmering circuit split, however, since appellant here does not seek a reconsideration of this court's long-standing position in it.

the fact that a live need for a declaration of State Farm's rights and duties did, in fact, exist. Neither party before us has suggested that State Farm was, or could have been made, a party to the state tort action, thus obviating any need for an independent declaratory action and providing a simpler and more efficient resolution of State Farm's obligations toward Mhoon. Indeed, both concede that a suit like this one would have been required at some point in some case other than the state tort action. We note, moreover, that there is a substantial interest in deciding these issues without undue delay, particularly the question of the duty to defend. *See generally Metro. Property & Liability Ins. Co. v. Kirkwood,* 729 F.2d 61 (1st Cir.1984) (deciding the duty to defend question first would allow the state tort action to be tried without the potential of a conflict of interest arising between insurer and insured). The federal district court was an available forum to State Farm, and on the facts before us we see no reason why the declaratory judgment action should not have proceeded as it did.

Finally, we add that entertaining State Farm's summary judgment motion involved no undue interference with the state proceeding. In hearing and deciding the summary judgment motion, the trial judge inquired whether, as a matter of law, there was any basis for holding that State Farm had a duty to defend or that its policy covered the conduct at issue in the state tort case. Having decided that there was no material fact to be settled on either issue, summary judgment was granted. The duty to defend issue, as will be explained below, involved only an examination of the state court complaint to see if its allegations of fact triggered the duty. Determining that duty involved no matter, factual or legal, at issue in the state case. Nor was the coverage issue, under the trial court's approach, a complicated one: it involved only a search of the relevant record to ascertain whether there was any triable issue with respect to whether Mhoon's conduct could be termed accidental under the terms of the homeowner policy. Any ambiguities, moreover, had to be resolved in appellant's favor. It is very doubtful that this approach and the summary judgment threatened any substantial interference in the state court proceedings.

This is not a case, therefore, where the district court found a material factual dispute and proceeded to resolve it in the face of ongoing state proceedings on the same subject. That would present quite a different issue, particularly in light of the fact that as of March 4, 1993, when summary judgment was granted, the state proceeding was quite far along. Even though a stay might be proper in such as case, a dismissal such as appellant suggests would not be required, since the duty to defend and coverage issues would remain to be decided in light of the outcome of the state case.

The short of the matter is that we see no abuse of discretion by the trial court in entertaining the declaratory judgment case brought by State Farm.[7]

### III

■ Even if it properly exercised jurisdiction over State Farm's claim, appellant argues the district court erred on the merits when it granted the company's summary judgment motion. We review appeals from summary judgment dispositions *de novo,* viewing all facts (and any reasonable inferences that might be drawn from them) in the light most favorable to the movee, and asking for ourselves whether there exists a genuine issue of material fact or whether the movant is entitled, as the trial court decided, to judgment as a matter of law. An issue of material fact qualifies as "genuine" for our

---

7. In his reply brief, appellant makes much hay of the fact that the district court did not offer a full exposition in the record of its reasons for accepting declaratory judgment jurisdiction over this case. Indeed, he asks that we reverse and remand on this basis alone. Appellant, however, is wrong that a reversal is automatically required. *See Allstate Ins. Co. v. Mercier,* 913 F.2d 273, 277 (6th Cir.1990) (when the district court is silent as to why it asserted jurisdiction, the court of appeals may either remand or review the matter itself). In any event, appellant failed to raise this issue in his opening brief and, hence, has waived the point. *See Headrick v. Rockwell International,* 24 F.3d 1272, 1277–1278 (10th Cir.1994); *Herbert v. National Academy of Sciences,* 974 F.2d 192, 196 (D.C.Cir.1992).

purposes if a "reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

 To these general rules of review, we add a particular one from New Mexico substantive law. Under a state supreme court decision, *Foundation Reserve Ins. Co. v. Mullenix,* 97 N.M. 618, 642 P.2d 604 (1982), an insurer's duty to defend is independent of its duty to insure. It is determined not by the actual underlying facts of the transaction, as the coverage issue is, but by the allegations of the injured party's complaint: "[T]he question presented to the insurer . . . is whether the injured party's complaint states facts which bring the case within the coverage of the policy, not whether he can prove an action against the insured for damages." *Id.* at 619, 642 P.2d at 605. Thus, only where the allegations in the complaint fall outside the scope of the coverage afforded by the insurance policy may the insurer avoid its duty to defend.

 With these rules in mind, we now turn to the facts of the case before us. Mhoon's homeowner's policy made quite clear that State Farm would insure and defend him only against "accident[s]" he caused, and not against damage he either "expected or intended" to effect. Thus, to survive summary judgment appellant need show that some material dispute of fact exists regarding whether he shot Fujiwara unintentionally; for purposes of the duty to defend, he need only demonstrate that the complaint itself alleges facts tending to show that Mhoon's shots were accidental.

As the district court held, however, appellant cannot meet either of these requisites. With regard to the Fujiwaras' initial complaint and the duty to defend, there is not a fact in the document even intimating that Mhoon "accidentally" shot Fujiwara. In their amended complaint the Fujiwaras expanded their action against Mhoon to incorporate allegations that he acted negligently.[8] But, as the district court noted, while that document *alleges* that Mhoon's actions were accidental, it offers no *facts* whatsoever that suggest this was the case.[9] The amended complaint simply and rotely asserts that Mhoon acted in a negligent or grossly negligent fashion without mention of a fact to support that conclusion. And, while *Mullenix* requires us to limit our examination to the four corners of the complaint when determining whether a duty to defend exists, it plainly requires the complaint to "state[ ] facts" that suggest the case falls within the policy's coverage, 97 N.M. at 619, 642 P.2d at 605; abstract and completely unsubstantiated allegations will not do.

Looking to the facts outside the complaint and amended complaint, the district judge found nothing that might aid appellant's cause with respect to the coverage of the homeowner policy, *see* Aplee.Supp.App. at 35, and our own examination of those facts reveals no reason to doubt his conclusion. Indeed, it strikes us, as it did the trial court, that Mhoon's own testimony virtually precludes any serious suggestion that he accidentally shot Fujiwara:

A: . . . I shot him in the gut. I aimed to his gut and I shot him in the gut. . . .

 . . . . .

Q: You know what a gun does, don't you?
A: Yes.

Aplee.Supp.App. at 10–11.

 While the district court here made its own independent factual finding that Mhoon had acted intentionally (and was, consequently, unentitled to coverage), and while we affirm it on that basis, we pause to note that it might have held the issue resolved by application of collateral estoppel. The jury in the New Mexico criminal proceeding had, after all, already decided squarely Mhoon's actions to be entirely intentional, not acciden-

---

8. While a motion to amend the initial complaint was filed and apparently granted in state court, *see* Aplee.Supp.App. at 55, 60, the amended complaint itself is not mentioned on the New Mexico state court docket sheet supplied to us. We will, however, assume for the purposes of this appeal that the document was properly filed.

9. The Fujiwaras had every incentive to plead those very facts if they existed since they were clearly interested in having State Farm satisfy any judgment they might receive against Mhoon.

tal. And, like federal law, New Mexico jurisprudence in recent years has made room for the use of nonmutual offensive collateral estoppel under conditions that would surely apply here. *Silva v. State*, 106 N.M. 472, 745 P.2d 380 (1987) (approving of *Parklane Hosiery v. Shore*, 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979) and adopting nonmutual offensive collateral estoppel into New Mexico law); *State v. Bishop*, 113 N.M. 732, 832 P.2d 793 (Ct.App.1992) (following *Silva*).[10]

 There remains a final issue to be decided. In a brief opposing summary judgment before the district court, Mhoon stated that he was insured by State Farm not only under a homeowner policy—as State Farm had discussed in its complaint seeking a declaratory judgment—but also under a business policy. Appellant argued the existence of the business policy was significant because, though it generally excluded intentional conduct like the homeowner's policy, it did cover injuries intentionally inflicted by the insured "if such injur[ies] arise[ ] solely from the use of reasonable force for the purpose of protecting persons or property." And, appellant submitted, even if he did intentionally shoot Fujiwara, he did so only in self defense. State Farm amended its complaint to deal with the business policy and discussed the matter in its reply brief to the district court, arguing among other things that Mhoon could not benefit from the policy since he was not the named insured and, in any event, did not shoot Fujiwara in self defense.

The district court did not mention the business policy in the course of announcing its summary judgment decision. Still, we have little difficulty affirming its ultimate disposition without resort to a remand. Even accepting *arguendo* that Mhoon was insured under the business policy, we see no credible factual allegation within the complaint, amended complaint, or any other pleading even intimating that Mhoon acted to protect himself. We note also that Mhoon raised a self defense argument in his state criminal trial and had it squarely rejected by the jury. Thus, as just discussed, under principles of nonmutual offensive collateral estoppel accepted in New Mexico and federal caselaw, the self defense question need not be relitigated in federal court.[11] We add, too, that were we to accept appellant's self defense argument we would not only find ourselves in disagreement with the state criminal jury verdict, but also with the result reached by the trial judge in the state tort suit—the very action appellant is so concerned that the federal courts not disrupt. The judge presiding over the tort action refused to allow the issues of self defense, intent and assault to be retried on the very same grounds we do—*viz.* holding that they had been "fully litigated in the criminal case" and were, thus, barred from relitigation under the principles of collateral estoppel enunciated in *Silva* and *Bishop*. Supplement to Aplee.Supp.App. at 1.[12]

 We also find without any merit appellant's argument that the business policy covers him even if he shot Fujiwara quite intentionally and did not do so in self de-

---

10. While principles of collateral estoppel would foreclose any claim that Mhoon was entitled to insurance coverage, they might not necessarily provide direct support for ruling that State Farm owed Mhoon no duty to defend since, again, the duty to defend is determined by reference not to the facts as ultimately found by a jury or judge, but as pleaded in the tort action complaint.

11. For the doctrine to apply under New Mexico law, *Bishop* indicates that four elements, elements which largely echo the prerequisites to the doctrine's application in federal law, must be present: "[1] the party against whom collateral estoppel is asserted must be the same party or be in privity with the party to the original action; [2] the subject matter of the cause of action in the two suits must be different; [3] the ultimate

facts or issues must have been actually litigated; and, [4] the issue must have been necessarily determined." 113 N.M. at 734, 832 P.2d at 795. It is quite plain to us that each of these four elements are present here; indeed, appellant himself does not argue otherwise.

12. Prior to oral argument and in an unopposed motion which we now grant, State Farm sought to supplement its supplemental appendix with a letter of July 27, 1993, from the trial judge to counsel in the state tort suit against Mhoon, as well as with the special verdict sheet returned by the jury in that case on September 7, 1993. The letter is listed on the docket sheet of the state court, Aplee.Supp.App. at 71, and advised counsel of the judge's collateral estoppel ruling.

fense. This conclusion is required, Mhoon submits, by *Knowles v. United Services Automobile Association,* 113 N.M. 703, 832 P.2d 394 (1992). There the New Mexico state supreme court held that when exclusionary and insuring provisions in an insurance policy are in irreconcilable conflict, the exclusionary clause is to be invalidated as a matter of public policy; an insurer cannot take away in one provision coverage he specifically grants in another. From this rule, appellant suggests it follows that the clause in the business policy denying coverage for harms intentionally inflicted is in conflict with the provision providing insurance for intentional acts taken in self defense and, consequently, must be disregarded. This suggestion is quite unconvincing. There is no conflict between holding an individual liable for harms he intentionally commits and yet absolving him of responsibility for intentional harms inflicted only in self defense; indeed, this is a distinction our criminal and tort systems make daily and have since time out of mind. And, writing such a distinction into an insurance policy hardly amounts to the sort of bait-and-switch tactic *Knowles* was so concerned to prevent. State Farm's policy never even begins to intimate that Mhoon might go about committing intentional torts willy-nilly and expect coverage (nor would any reasonable person expect the typical business policy to be so generous); the company never falsely attempts to lure Mhoon into believing himself insured for any and all intentional harms he might wish to commit. Rather, State Farm's policy makes it quite plain that it will only provide for intentional harms in the narrow, and sensible, class of cases where self defense is involved and the company at no point in this litigation has attempted to shirk from that responsibility.

## IV

This case has seen Mhoon and Fujiwara go from neighbors to enemies to allies against State Farm. Mhoon's shooting of Fujiwara has been the subject of attention in three separate actions and five courtrooms; it has been the focus of two jury verdicts, a trial judge's summary disposition, and two appeals, all of which have come to the same fundamental conclusions. Hopefully, this will be the end of it. The judgment is

*Affirmed.*