MEMORANDUM OPINION
 

 MYRON H. THOMPSON, Chief Judge.
 

 The Declaratory Judgment Act of 1934 provides that,
 

 “In a case of actual controversy within its jurisdiction, ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.”
 

 28 U.S.C.A. § 2201(a) (West 1994). This court is confronted with an issue that, surprisingly, has seldom arisen in the 60 years since the Act’s passage: whether and when a person or entity that has been threatened with tort litigation may seek relief under the Act.
 

 Relying on the Act, plaintiffs United Insurance Company of America and its subsidiary, Union National Life Insurance Company, seek a declaration that they are not liable for fraud in the sale of health insurance to defendants Robert and Martha Harris. The insurance companies have invoked the court’s diversity-of-eitizenship jurisdiction. 28 U.S.C.A. § 1332 (West 1993). The companies are citizens of Louisiana and Illinois, and the Harrises are citizens of Alabama. Now before the court is the Harrises’ motion for dismissal or, in the alternative, for transfer to a state court. For the reasons that follow, the court will dismiss this lawsuit, albeit without prejudice.
 

 I.
 

 The events leading up to this litigation and the pending motion may be summarized as follows:
 

 • In 1989, the Harrises purchased life insurance from United Insurance. They contend that they instructed United Insurance’s agents that they wanted only life insurance, and did not want the health policy also being offered.
 

 
 *1529
 
 • In 1994, according to the Harrises, they discovered that, despite their instructions, United Insurance had sold them a health policy along with a life policy.
 

 • In April 1995, the Harrises’ attorney wrote United Insurance, alleging that the insurance company had fraudulently sold the Harrises a health insurance policy. He said he understood that “United is interested in settling this matter out-of-court, and the purpose of this letter is to extend to you the Harrises’ settlement demand.”
 
 [1]
 
 The attorney set forth the factual basis for the Harris-es’ fraud claim and made a demand for $300,-000. He concluded that, “Unless we can consummate this settlement within the next 30 days, then the Harrises have authorized us to pursue this matter by filing suit in a court of competent jurisdiction.”
 
 [2]
 

 • In May 1995, the Harrises’ attorney wrote United Insurance another letter, this time rejecting the counteroffer the insurance company had made in the meantime. The attorney took issue with the insurance company’s view of the facts, and stated that he had “completed drafting the Harrises’ complaint and initial interrogatories and requests for production of documents, all of which are aimed at no[t] only the merits of the case, but whether any factual and legal basis exists for a class action.”
 
 [3]
 
 He concluded that the “Harrises will file this lawsuit and commence formal litigation in due course, absent our timely receipt from you of a counteroffer which more accurately reflects the wrongs which have occurred.”
 
 [4]
 

 • On October 16,1996, the Harrises’ attorney wrote United Insurance again. He thanked the insurance company for its “last correspondence” and acknowledged that he and the insurance company “disagree as to the seriousness of the Harris[es]’ claim.”
 
 [5]
 
 He stated that the Harrises “are prepared to move forward towards litigation,” and he submitted to the insurance company “formal, pre-action discovery, pursuant to Rules 27 and 34, Alabama Rules of Civil Procedure,” which, according to him, would “provide the Harrisfes] a means by which they can examine evidence in conjunction with their determination of whether a reasonable basis exists for instituting legal action against United Insurance Company of America.”
 
 [6]
 
 The attorney gave the insurance company 14 days to answer the discovery.
 

 • Rather than waiting for a “determination” by the Harrises’ attorney as to “whether a reasonable basis exists for instituting legal action” in light of the requested discovery, United Insurance and its subsidiary, Union National, responded in the offensive with their own lawsuit. On November 3, 1995, they filed a complaint under the Declaratory Judgment Act, asking that the court “hear evidence relating to ... whether or not [the Harrises] have been defrauded by [them]” and enter a declaration “that [they] are not liable to [the Harrises] in any way.” The only factual basis given in support of the lawsuit was the following: “On or about April 11, 1995, United received a letter from an attorney for Defendants. In that letter, Defendants contend that United and/or Union National fraudulently sold the Defendants health insurance policies and that United and/or Union Nation suppressed facts by which the Defendants would learn of United’s allegedly fraudulent conduct.” The insurance companies further alleged in their complaint that, “In that letter, the Defendants demanded that Plaintiffs pay them money damages in excess of the jurisdictional amount which is contained in 28 U.S.C. § 1332,” and that “The attorney for Defendants has subsequently, via further correspondence, threatened suit, demanded documents and claimed monetary damages in excess of $50,000.00.”
 

 United Insurance and Union National gave no details as to when, where, and how the Harrises maintained the fraud was to have been committed. Notably also, the insurance
 
 *1530
 
 companies omitted any reference to the fact that, just two weeks before, the Harrises had asked for prelitigation discovery so that they could make a determination of “whether a reasonable basis exists for instituting legal action.” It is unclear whether United Insurance even responded to the discovery request.
 

 • On December 4, 1995, the Harrises answered United Insurance and Union National’s complaint. In addition to denying that relief was appropriate under the Declaratory Judgment Act, the Harrises filed a detailed counterclaim for fraud. They alleged that the companies and two of their Alabama agents, Felix Thomas and Steven R. Clark, had fraudulently sold them health insurance. They also sought to have Thomas and Clark added as indispensable counterclaim defendants.
 

 • On December 4, the Harrises also filed the motion for dismissal or, in the alternative, for transfer, now before the court.
 

 H.
 

 A.
 

 Confronted with a claim under the Declaratory Judgment Act, this court is presented with three issues. The contentions of United Insurance and Union National and the Harrises are as follows with regard to these issues.
 
 First,
 
 the parties dispute whether the court has diversity jurisdiction under § 1332. The
 
 Declaratory
 
 Judgment Act is not itself a grant of federal jurisdiction, but an attempt by Congress “to place a remedial arrow in the district court’s quiver.”
 
 Wilton v. Seven Falls Co.,
 
 — U.S. -, -, 115 S.Ct. 2137, 2143, 132 L.Ed.2d 214 (1995). The Act is procedural and not jurisdictional.
 
 Aetna Life Ins. Co. v. Haworth,
 
 300 U.S. 227, 240, 57 S.Ct. 461, 463, 81 L.Ed. 617 (1937). Therefore, declaratory relief may be sought only where there exists an independent ground of jurisdiction. Here, as stated, United Insurance and Union National have properly invoked jurisdiction pursuant to § 1332 based on diversity of citizenship. The Harrises contend, however, that, with their request to add two Alabama agents as indispensable counterclaim defendants, diversity of citizenship would be destroyed.
 

 United Insurance and Union National respond that this court would have supplemental jurisdiction under 28 U.S.C.A § 1367 (West 1993) over the two agents. According to the insurance companies, where the plaintiff has satisfied the requirements of diversity jurisdiction, a court has supplemental jurisdiction over a defendant’s counterclaim, even if the counterclaim joins a non-diverse party — so long, of course, as the counterclaim is part of the same case or controversy. The companies argue that, because the requirements of § 1332 are otherwise met here and because defendants, not plaintiffs, seek to add non-diverse parties, this court may properly exercise supplemental jurisdiction over the non-diverse parties and the counterclaims against them.
 
 See In re Texas Eastern Transmission Corp. PCB Contamination Ins. Coverage Lit.,
 
 15 F.3d 1230, 1237-38 (3d Cir.),
 
 cert. denied,
 
 — U.S. —, 115 S.Ct. 291, 130 L.Ed.2d 206 (1994); 6 Wright, Miller, & Kane, Federal Practice and Procedure § 1436, at 18 (Supp.1996).
 

 Second,
 
 the parties dispute whether this court is presented with a justiciable controversy. The Constitution restricts the exercise of judicial power to “cases” and “controversies.” U.S. Const, art. Ill, § 2. “The Declaratory Judgment Act of 1934, in its limitation to ‘cases of actual controversy,’ manifestly has regard to the constitutional provision,”
 
 Aetna Life Ins. Co. v. Haworth,
 
 300 U.S. 227, 240-41, 57 S.Ct. 461, 463, 81 L.Ed. 617 (1937), and thus “is operative only in respect to controversies which are such in the constitutional sense.”
 
 Id.
 

 [7]
 

 “[T]he question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment____ It is immaterial that frequently, in the declaratory judgment suit, the positions of the parties in
 
 *1531
 
 the conventional suit are reversed; the inquiry is the same in either case.”
 
 Maryland Casualty Co. v. Pacific Coal & Oil Co.,
 
 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826 (1941).
 

 The Harrises contend that a case or controversy is not presented because United Insurance and Union National have acted based on only an “anticipation of ... a state court lawsuit.”
 
 [8]
 
 The insurance companies respond that the mere threat of a lawsuit over a sufficiently concrete matter may satisfy the constitutional demand.
 
 See
 
 E. Borchard, Declaratory Judgments 7 (2d ed. 1941) (declaratory relief is not limited to the threat of damage, but is appropriate on the “mere assertion of an unfounded claim.” ... [The] “utterance of a claim ... authorizes the plaintiffs ‘right of action.’ ”);
 
 id.
 
 at 21 (“The mere claim of right by the defendant may do the plaintiff such harm as to entitle him to a judgment establishing a legal right____ Security and certainty in legal relations is a matter of public as well as private interest.”);
 
 see also
 
 10A Wright, Miller & Kane, Federal Practice and Procedure § 2757, at 585 (2d ed. 1983) (“There is little difficulty in finding an actual controversy if all of the acts that are alleged to create liability have occurred.”).
 

 Third,
 
 the parties dispute whether this court should exercise its discretion to entertain the insurance companies’ request for declaratory relief. The Declaratory Judgment Act states that a court
 
 “may
 
 declare the rights and other legal relations of any interested party seeking this declaration.” 28 U.S.C.A. § 2201 (emphasis added). The Supreme Court has “repeatedly characterized the Declaratory Judgment Act as ‘an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant.’ ”
 
 Wilton,
 
 — U.S. at-, 115 S.Ct. at 2143 (quoting
 
 Public Serv. Comm’n v. Wycoff Co.,
 
 344 U.S. 237, 241, 73 S.Ct. 236, 239, 97 L.Ed. 291 (1952)).
 

 Therefore, “ ‘[t]here is ... nothing automatic or obligatory about the assumption of “jurisdiction” by a federal court to hear a declaratory judgment action____ Consistent with the nonobligatory nature of the remedy, a district court is authorized, in the sound exercise of its discretion, to stay or to dismiss an action seeking a declaratory judgment before trial or after all arguments have drawn to a close. In the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration.’ ”
 
 Wilton,
 
 — U.S. at -, 115 S.Ct. at 2143 (quoting E. Borchard, Declaratory Judgments 313 (2d ed. 1941)). Emphasizing the “unique breadth of this discretion,” the Supreme Court has stated that it is “more consistent with the statute to vest district courts with discretion in the first instance, because facts bearing on the usefulness of the declaratory judgment remedy, and the fitness of the case for resolution, are peculiarly within their grasp.”
 
 Id.
 
 at -, 115 S.Ct. at 2144.
 

 The Harrises observe that, although few courts have addressed the issue now before this court, those that have, have almost uniformly concluded that tort claims are ill-suited for declaratory relief.
 
 See, e.g., Cunningham Bros. v. Bail,
 
 407 F.2d 1165, 1167 (7th Cir.),
 
 cert. denied,
 
 395 U.S. 959, 89 S.Ct. 2100, 23 L.Ed.2d 745 (1969),
 
 Friedman v. Geller,
 
 925 F.Supp. 611, 613 (E.D.Wis.1996),
 
 Douglas v. Don King Productions, Inc.,
 
 736 F.Supp. 223, 225 (D.Nev.1990);
 
 Southern Ins. Co. v. Bennett,
 
 680 F.Supp. 387, 389 (M.D.Ga.1988);
 
 Frito-Lay, Inc. v. Dent,
 
 373 F.Supp. 771, 773 (N.D.Miss.1974);
 
 see also
 
 10A Wright, Miller,
 
 &
 
 Kane, Federal Practice and Procedure § 2765, at 729 (2d ed. 1983) (“it is not one of the purposes of the Declaratory Judgment Act to enable a prospective negligence action defendant to obtain a declaration of non-liability”).
 

 United Insurance and Union National respond that, “Since at least April 1995, [the Harrises] have continuously threatened litigation against United and Union National. Rather than waiting endlessly to become a defendant, United and Union National chose to have the rights and obligations of the parties determined once and for all in this declaratory judgment action, which was filed
 
 *1532
 
 on November 4, 1995.”
 
 [9]
 
 According to the companies, “Resolving the uncertainty and anxiety resulting from a looming lawsuit is, indeed, the purpose of the Declaratory Judgment Act.”
 
 Oce-Office Systems, Inc. v. Eastman Kodak Co.,
 
 805 F.Supp. 642, 646 (N.D.Ill.1992). They also note that the Eleventh Circuit Court of Appeals has recognized that, “Although the district court has an area of discretion in deciding whether to grant or deny declaratory relief, that discretion should be exercised liberally in favor of granting such relief in order to accomplish the purposes of the Declaratory Judgment Act.”
 
 Cincinnati Ins. Co. v. Holbrook,
 
 867 F.2d 1330, 1333 (11th Cir.1989) (per curiam).
 

 B.
 

 Because the court, in its discretion, declines to exercise jurisdiction over United Insurance and Union National’s claim, it is necessary to resolve only the third issue. In
 
 Cunningham Bros.,
 
 relied upon by the Harrises, the Seventh Circuit Court of Appeals explained that “The primary purpose of [the Declaratory Judgment] Act is ‘to avoid accrual of avoidable damages to one not certain of his rights and to afford him an early adjudication without waiting until his adversary should see fit to begin suit, after damage had accrued.’ ” 407 F.2d at 1167-68 (quoting
 
 E. Edelmann & Co. v. Triple-A Specialty Co.,
 
 88 F.2d 852, 854 (7th Cir.),
 
 cert. denied,
 
 300 U.S. 680, 57 S.Ct. 673, 81 L.Ed. 884 (1937)). There, a contractor had sued for a declaration of non-liability after workers fell from a scaffold and were injured. The court pointed out that the plaintiff had failed to demonstrate how allowing the declaratory action would “effectuate the purposes of the statute and thereby afford relief from uncertainty with respect to rights, status and other legal relations.” 407 F.2d at 1168. The court reasoned that the workers had already suffered their damages, so that a delay in the hearing of the matter would not increase the contractor’s liability.
 
 Id.
 
 Similarly, according to the Harrises, United Insurance and Union National will incur no increased liability no matter when, or whether, the Harrises choose to bring suit.
 

 The
 
 Cunningham Bros,
 
 court further explained that “To allow a declaratory judgment action under the facts before us would be to allow a substitute for the traditional procedures for adjudicating negligence cases.”
 
 Id.
 
 “To so reverse the roles of the parties would affect more than merely the form of action, but would jeopardize those procedures which the law has traditionally provided to injured parties by which to seek judicial relief.”
 
 Id.
 
 The court acknowledged that “the existence of another adequate remedy does not preclude a judgment for declaratory relief in cases where it is appropriate.” Fed.R.Civ.P. 57. The court, however, stated that such relief is still “inappropriate” where “‘more effective relief can and should be obtained by another procedure.’ ”
 
 Id.
 
 (quoting
 
 Chicago Metallic Mfg. Co. v. Edward Katzinger Co.,
 
 123 F.2d 518, 520 (7th Cir. 1941)). The court further explained that “Since the sustaining of plaintiff’s suit in the instant case would force an injured party to litigate a claim which he may not have wanted to litigate at a time which might be inconvenient to him or which might precede his determination of the full extent of his damages, and in a forum chosen by the alleged tortfeasor, we hold that the action was inappropriate for declaratory relief and was therefore properly dismissed against the individual defendants.”
 
 Id.
 
 at 1169. The Harrises argue that these general comments are fully applicable to — and, indeed, determinative of — the proceedings now before this court.
 

 However, it cannot be overlooked that there is no outright prohibition in the Declaratory Judgment Act against the hearing of tort actions.
 
 [10]
 
 Moreover, United Insurance and Union National contend that this litigation is rooted in contract as well as tort law. According to the insurance companies, the Harrises are essentially attacking an insur
 
 *1533
 
 anee contract. The companies contend that they are seeking “a declaration from this Court that [they] owe[ ] no obligation to [the Harrises] beyond that set forth in the insurance contracts.”
 
 [11]
 
 They correctly note that, in
 
 Aetna Life Ins.,
 
 the Supreme Court held that, in a “dispute relating] to legal rights and obligations arising from contracts of insurance,” where “[p]rior to ... suit, the parties had taken adverse positions with respect to their existing obligations,” 300 U.S. at 242, 57 S.Ct. at 464, and where “the character of the controversy and of the issue to be determined is the same whether it is presented by the insured or by the insurer,”
 
 id.
 
 at 244, 57 S.Ct. at 465, declaratory relief is appropriate. The insurance companies contend that, for these reasons,
 
 Cunningham Bros,
 
 is not applicable here.
 

 In any event, other courts have developed a number of additional factors for a trial judge to weigh in evaluating whether to dismiss or stay a declaratory judgment action, regardless as to whether the dispute arises out of tort or contract. Many courts of appeals have applied a two-part test formulated by Professor Borchard: whether a declaration, under the circumstances, “will serve a useful purpose in clarifying and settling the legal relations in issue,” and whether it will “terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.” E. Borchard, Declaratory Judgments 299 (2d ed. 1941).
 
 See, e.g., State Farm Fire and Cas. Co. v. Mhoon,
 
 31 F.3d 979, 983 (10th Cir.1994);
 
 Broadview Chem. Corp. v. Loctite Corp.,
 
 417 F.2d 998, 1001 (2d Cir.1969),
 
 cert. denied,
 
 397 U.S. 1064, 90 S.Ct. 1502, 25 L.Ed.2d 686 (1970);
 
 Panhandle Eastern Pipe Line Co. v. Michigan Consol. Gas Co.,
 
 177 F.2d 942, 944 (6th Cir.1949). Recently, however, this test has given way to the consideration of expanded lists of criteria. For example, the Sixth and Tenth Circuit Courts of Appeals have adopted a list including the following: (1) whether a declaratory action would settle the controversy; (2) whether it would serve a useful purpose in clarifying the legal relations at issue; (3) whether the declaratory remedy is being used merely for the purpose of “procedural fencing” or “to provide an arena for a race to res judicata”; (4) whether use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and (5) whether there is an alternative remedy which is better or more effective.
 
 State Farm Fire and Cas. Co. v. Mhoon,
 
 31 F.3d 979, 983 (10th Cir.1994);
 
 Allstate Ins. Co. v. Green,
 
 825 F.2d 1061, 1063 (6th Cir. 1987).
 

 The Fifth Circuit Court of Appeals has formulated a similar list of relevant factors: (1) whether there is a pending state court action in which all of the matters in controversy may be fully litigated, (2) whether plaintiff filed lawsuit in anticipation of a lawsuit filed by defendant; (3) whether the plaintiff engaged in forum shopping in bringing the suit; (4) whether there are possible inequities in allowing the declaratory plaintiff to change forums; (5) whether federal court is a convenient forum for the parties and witnesses; and (6) whether retaining the lawsuit in federal court would be in the interests of judicial economy.
 
 Travelers Ins. Co. v. Farm Bureau Federation, Inc.,
 
 996 F.2d 774, 778 (5th Cir.1993).
 

 This court need not determine whether it should buy into
 
 Cunningham Bros.’s
 
 general proposition that tort claims are poorly suited for declaratory relief. Applying several of the factors listed by the Fifth, Sixth, and Tenth Circuits, this court concludes that circumstances presented in this case, whether viewed through the lens of tort or contract law, countenance firmly against the exercise of declaratory relief. First, the Harrises propounded “pre-action discovery” to United Insurance and Union National in order to determine whether “a reasonable basis exists for instituting legal action.” Such initial inquiry is encouraged, if not required, by Rule 11 of the Federal Rules of Civil Procedure. Rule 11 provides that, “By presenting to the court ... a pleading, ... an attorney or unrepresented party is certifying that to the best of the person’s knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, ... the allegations and other factual conten
 
 *1534
 
 tions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.” The Rule “stresses the need for some prefiling inquiry into both the facts and the law.” Fed.R.Civ.P. 11 (advisory committee notes to 1983 amendments).
 

 Admittedly, the Harrises’ attorney had the Harrises’ version of the facts. But it is apparent that, before deciding whether to file a lawsuit, he wanted to see whether there was other evidence that would support or undermine his clients’ version. Rule 11 recognizes, as the 1993 Advisory Committee Notes state, that “a litigant may have good reason to believe that a fact is true or false but may need discovery, formal or informal, from opposing parties or third persons to gather and confirm the evidentiary basis for the allegation.”
 

 However, United Insurance and Union National essentially forced the Harrises into abandoning Rule ll’s pre-filing inquiry. Rather than waiting to give the Harrises a reasonable period of time to reassess their case in light of the anticipated discovery, the insurance companies rushed in to court and forced the Harrises into filing an answer and asserting a counterclaim of fraud before they had made the necessary reasonable reassessment in light of any new discovery. Indeed, because, from an objective perspective, it would have been in the insurance companies’ interest to have allowed the Harrises to reassess their fraud claim, the court is convinced that the true reason behind the companies’ haste to court was to use the Declaratory Judgment Act as a tactical device, as a vehicle to allow them to choose the place for litigation.
 
 [12]
 

 If the court were to allow this conduct, it would greatly undermine, albeit indirectly, the laudatory purposes of Rule 11. Persons who believed that they had been wronged would wait at their peril to make the necessary Rule 11 inquiry before filing suit. The result would be that the deliberative and objective evaluation of claims before suit, encouraged, if not required, by Rule 11, would be sacrificed in favor of a mad rush by all concerned to the courthouse, so as to gain the tactical advantage of choosing the place for suit.
 

 In contrast, by dismissing this lawsuit and thereby discouraging United Insurance and Union National’s conduct, this court upholds the letter and spirit of Rule 11. The court says to persons who believe that they have been wronged that they may freely and without risk take advantage of Rule 11. And, of course, in those instances where, after a reasonable inquiry, a person decides not to file suit, everyone wins: both sides to the dispute save the costs and embarrassment of litigation, and there is the too often overlooked benefit that the court saves its limited and valuable resources for those claims that truly merit litigation.
 

 Second, it is unclear what Rule 9 of the Federal Rules of Civil Procedure should play in a declaratory judgment action in which the issue is whether the defendant has a meritorious fraud claim. Rule 9 provides that, “In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity.” Many salutary reasons have been advanced for the rule, one of which is particularly pertinent here: “since assertions of fraud or mistake often are involved in attempts to reopen completed transactions or set aside previously issued judicial orders, courts are unwilling to entertain charges of this type unless they are based on allegations that are sufficient to show whether the alleged injustice is severe enough to warrant the risks and difficulties inherent in a re-examination of old and settled matters.” 5 Wright
 
 &
 
 Miller, Federal Practice and Procedure § 1296, at 580 (2d ed. 1990). Other reasons are that it “is necessary to safeguard potential defendants from lightly made claims charging commission of
 
 *1535
 
 acts that involve some degree of moral turpitude,”
 
 id.
 
 at 577-78; “[a]llegations of fraud or mistake frequently are advanced only for their nuisance or settlement value,”
 
 id.
 
 at 578-80; and “fraud and mistake embrace such a wide variety of potential conduct that a defendant needs a substantial amount of particularized information about plaintiffs claim in order to enable him to understand it and effectively prepare his response.”
 
 Id.
 

 In a proceeding initiated by the Harrises, there would be no question that they are subject to Rule 9, or its Alabama counterpart (Ala.R.Civ.P. 9(b)), and there would be no question that they would be in a position to meet its disclosure requirements. United Insurance and Union National and the court would therefore have the benefit of an initial complaint that met its requirements. By contrast, in the declaratory complaint filed in this court, the insurance companies were able to make only the extremely broad allegation that “Defendants contend that United and/or Union National fraudulently sold the Defendants health insurance policies and that United and/or Union Nation suppressed facts by which the Defendants would learn of United’s allegedly fraudulent conduct.” Had the Harisses made such a general fraud allegation against the insurance companies, the companies would have swiftly and rightfully responded with a Rule 9(b) motion for more detail. But for the Harrises’ counterclaim, neither the insurance companies nor the court would even know what this case really involves.
 

 It is therefore apparent that the meat of this case is the Harrises’ counterclaim for fraud, not the insurance companies’ claim for declaratory relief. All that the insurance companies have done is force the Harrises to litigate their fraud claim in the insurance companies’ chosen forum. Bluntly put, the insurance companies have abused the Declaratory Judgment Act to engage in nothing but forum shopping. Here, not only is the tail wagging the dog, it is a nub of a tail doing so.
 
 [13]
 

 III.
 

 In conclusion, United Insurance and Union National are essentially seeking to use the Declaratory Judgment Act as a tactical device. This lawsuit was filed “in anticipation of a lawsuit filed by defendants],”
 
 Travelers Ins. Co.,
 
 996 F.2d at 778; the insurance companies have “engaged in forum shopping in bringing the suit.”
 
 Id.
 
 This action is being used merely for the purpose of what the Sixth and Tenth Circuit condemned as “procedural fencing.”
 
 Mhoon,
 
 31 F.3d at 983.
 

 But more is at stake here than parochial tactics. As stated, the Declaratory Judgment Act is a new and welcomed “remedial arrow in the district court’s quiver.”
 
 Wilton,
 
 — U.S. at -, 115 S.Ct. at 2143. However, over time and with the help of the courts, Congress has crafted a detailed set of civil rules to assure the orderly and efficient presentation of colorable claims for litigation. Courts must be careful that, in exercise of their discretion to use or not use this “remedial arrow,” proper homage is paid to these rules of fair play. Here, Rules 9 and 11 strongly counsel against United Insurance and Union National’s request for declaratory relief.
 

 An appropriate judgment dismissing this lawsuit without prejudice will be entered.
 
 [14]
 

 JUDGMENT
 

 In accordance with the memorandum opinion entered on this date, it is the ORDER, JUDGMENT, and DECREE of the court:
 

 (1) That defendants Robert and Martha Harris’s motion for dismissal, filed on December 4,1995, is granted;' and
 

 
 *1536
 
 (2) That this lawsuit, including all claims and counterclaims, is dismissed without prejudice.
 

 It is further ORDERED that costs are taxed against plaintiffs United Insurance and Union National Insurance Company, for which execution may issue.
 

 ORDER
 

 Plaintiffs United Insurance Company of America and Union National Life Insurance Company have filed a motion asking that this court reconsider its decision of September 19,1996.
 

 In its September 19 memorandum opinion, the court wrote that “Rules 9 and 11 [of the Federal Rules of Civil Procedure] strongly counsel against United Insurance and Union National’s request for declaratory relief.” The court explained that “the Harrises propounded ‘pre-action discovery
 
 [1]
 
 to United Insurance and Union National in order to determine whether ‘a reasonable basis exists for instituting legal action.’ Such initial inquiry is encouraged, if not required, by Rule 11.” The court further explained that, “In a proceeding initiated by the Harrises, there would be no question that they are subject to Rule 9, or its Alabama counterpart (Ala. R.Civ.P. 9(b)), and there would be no question that they would be in a position to meets its disclosure requirements____ But for the Harrises’ counterclaim, neither the insurance companies nor the court would even know what this case really involves____ All that the insurance companies have done is force the Harrises to litigate their fraud claim in the insurance companies’ chosen forum.”
 

 In their motion for reconsideration, United Insurance and Union National reemphasize that they were “Faced with repeated threats of litigation and sabre rattling from the Harrises’ lawyers.” While admittedly the threat of litigation is a factor the court did consider, and should have considered, in determining whether declaratory relief was appropriate, the threat here did not outweigh the other concerns articulated in the September 19 memorandum opinion. Moreover, there was only a five- to six-month delay, from April to October. This period is not an inordinate amount of time before initiating litigation. There was also no suggestion that relevant evidence was being destroyed or lost, or that the Harrises were gaining some substantive or tactical advantage from delay. In addition, while perhaps qualifying as “repeated,” three letters are not sufficiently repetitious and out of the ordinary to warrant an immediate resort to a defensive lawsuit.
 

 It is also significant, and the record so implies, that, upon receipt of the Harrises’ attorney’s last letter, the attorneys for United Insurance and Union National made their first appearance, and their immediate response was to slap the Harrises with a defensive lawsuit. This is not the prevailing practice for the legal bar for the Middle District of Alabama, which includes not only lawyers who live in this district but those who regularly practice in this court.
 
 [1]
 
 In this district, the common practice is that, when parties to a dispute cannot work things out among themselves and must resort to separate legal representation, the retained attorneys then make informal contact with each other to reassess the situation and, if possible, attempt to work things out without litigation. This informal, pre-filing exchange is something the court should not only allow but encourage. For, under this practice and in the spirit of Rule 11, attorneys who are considering filing suit have the opportunity to reexamine their positions in light of the legal and factual issues as framed, or re-framed, by the newly retained opposing counsel, a benefit the initiating attorneys may not have had in their contact with the
 
 *1537
 
 alleged wrongdoers before the appearance of opposing counsel.
 

 Indeed, the court hopes that members of the legal bar for the Middle District of Alabama are not beginning to lean towards the view that, even in the absence of the immediacy of the running of a limitations period, lawyers representing alleged victims must still rush to court or else risk defensive lawsuits, seeking essentially inverse declaratory relief. If so, they are creating a culture of paranoia, in which attorneys seeking informal resolution and discovery would face — or, at least, would reasonably fear that they would face — defensive or anticipatory lawsuits rather than informal, pre-litigation dialogue.
 

 The court is aware of criticism from some corners that attorneys for plaintiffs are using their right to choose the forum for litigation to take unfair advantage of defendants. Whether this criticism has merit this court need not reach. But assuming that it does, the solution does not reside in the use of declaratory judgments as defensive devices. Defendants will ultimately lose in the race to the courthouse, because, perforce, plaintiffs’ battle cry will become “sue first and ask questions later.” Indeed, all will lose — plaintiffs, defendants, the court system, and the public — for everyone will have lost sight of Rule ll’s laudatory goal of curbing litigation by stressing “the need for some prefiling inquiry into both the facts and the law.” Fed.R.Civ.P. 11 (advisory committee notes to 1988 amendments).
 

 The court hopes, instead, that the members of the local bar for the Middle District of Alabama will continue to feel comfortable that, as set out in the September 19 memorandum opinion, “they may freely and without risk take advantage of Rule 11.”
 
 [2]
 
 Therefore, if the attorneys for United Insuranee and Union National had been true not only to Rule 11 but the legal culture of this district, they would have, upon receipt of the last letter from the Harrises’ attorney, contacted him for possible amicable and informal resolution among counsel.
 

 United Insurance and Union National also complain that, in the request for additional discovery, the Harrises failed to comply with the formal requirements of either the Federal or Alabama Rules of Civil Procedure for discovery before suit. This is not, however, a reason for the insurance companies’ attorneys’ rush into court, seeking immediate declaratory relief, without first having made any informal contact with the Harrises’ attorney. As the court explained in its memorandum opinion of September 19, the purpose behind Rule 11 of the Federal Rules of Civil Procedure is to encourage a reasonable, informal inquiry before a decision is made whether to initiate litigation. If the attorneys for United Insurance and Union National had furnished the requested discovery or any part of it (assuming that some of the requested discovery may have been objectionable), or if they had simply contacted the Harrises’ attorney and let him know their assessment of the dispute, the insurance companies’ attorneys could have allowed the Harrises the opportunity to reassess their case and comply with Rule ll.
 
 [3]
 
 Who knows? — All attorneys might have concluded that this lawsuit — any lawsuit — was unnecessary.
 

 In any event, in the wake of the dismissal of this lawsuit (in particular, the Harrises’ counterclaim), the Harrises filed their own lawsuit in state court. With the dismissal of this lawsuit, the Harrises were no longer arguably precluded by state law from maintaining a separate lawsuit.
 
 See
 
 1975 Ala
 
 *1538
 
 bama Code § 6-5-440 (Michie 1993) (“No plaintiff is entitled to prosecute two actions in the courts of this state at the same time for the same cause and against the same party”). In addition, United Insurance and Union National now need suffer no longer the threat of litigation; they have been sued.
 

 Accordingly, it is ORDERED that the motion for reconsideration filed by plaintiffs United Insurance Company of America and Union National Life Insurance Company on September 26,1996, is denied.
 

 [1]
 

 . Plaintiffs’ brief filed on February 16, 1996, attachment one.
 

 [2]
 

 .
 
 Id.
 

 [3]
 

 .
 
 Id.,
 
 attachment two.
 

 [4]
 

 .
 
 Id.
 

 [5]
 

 . Id.,
 
 attachment three.
 

 [6]
 

 . Id.
 

 [7]
 

 . “The word ‘actual’ is one of emphasis rather than of definition.”
 
 Aetna Life Ins.,
 
 300 U.S. at 240-41, 57 S.Ct. at 463.
 

 [8]
 

 . Defendants’ brief filed on December 4, 1995, at 4.
 

 [9]
 

 . Defendants' brief filed on February 16, 1996, at 2.
 

 [10]
 

 . Indeed, some courts have found circumstances under which declaratory actions should proceed under a mere threat of a tort action.
 
 Ditzler v. Spee,
 
 288 Minn. 314, 180 N.W.2d 178 (1970);
 
 see
 
 10A Wright, Miller, & Kane, Federal Practice and Procedure § 2765, at 729-31 (2d ed. 1983).
 

 [11]
 

 . Plaintiffs’ brief filed on Februaiy 16, 1996, at 3.
 

 [12]
 

 . Section 6-5-440 of the 1975 Alabama Code (Michie 1993) provides that "No plaintiff is entitled to prosecute two actions in the courts of this state at the same time for the same cause and against the same party.” Therefore, having filed a counterclaim in this court, the Harrises could not file a separate lawsuit on the same issue in another court. And if they had chosen to file a separate lawsuit in another court, they might have been prohibited from filing a counterclaim in this court.
 

 [13]
 

 . It is also unclear whether and how the court would assess damages, if it were to find that the Harrises should prevail on the insurance companies’ claim for declaratory relief. Would the court enter a declaration not only of liability in favor of the Harrises but also of damages?
 

 [14]
 

 . In their motion, the Harrises asked in the alternative that this lawsuit be transferred to state court. In their briefs filed later, they abandoned this alternative request. In any event, the Harrises have not pointed to any statute, federal or state, that would authorize such a novel request.
 

 [1]
 

 .
 
 See Gay Lesbian Bisexual Alliance v. Sessions,
 
 930 F.Supp. 1492, 1495 (M.D.Ala.1996) ("The United States District Court for the Middle District of Alabama sits in Montgomery, the capital and center of government for the State. This court is therefore the forum for legal claims from all over the State, especially if the claims concern State matters of broad public application and interest. Indeed, this case dramatically demon-states the breadth of the court’s reach, because the events that gave rise to the litigation occurred not in the Middle District of Alabama but in Mobile in the Southern District of Alabama and in Tuscaloosa in the Northern District of Alabama. For such matters,
 
 the bar of this court is essentially the State as a whole, with lawyers typically coming from all across the State to file and defend claims.")
 
 (emphasis added).
 

 [2]
 

 . The judges of the Middle District of Alabama frequently praise the local bar for the low incidents of Rule 11 violations and complaints.
 

 [3]
 

 . It is also significant that, while not required to do so, the insurance companies have produced no intra-office memoranda or other documentary evidence reflecting that they felt harassed by the threats of litigation from the Harrises and felt the need to begin their own lawsuit without their attorneys making any contact with the Harrises’ attorney.
 

 The court is firmly convinced that it was the Harrises’ attorney’s request for pre-filing discovery, not the letters themselves, that prompted this rush for declaratory relief. Upon the Harris-es' request for discovery, United Insurance and Union National and their attorneys simply decided to head the Harrises off at the pass, without the insurance companies’ attorneys engaging in even the common courtesy of letting the Harris-es’ attorney know of their involvement.