*1117 LUCERO, Circuit Judge,
concurring in the result.
Although I reluctantly agree with the result reached by my colleagues, I write separately to articulate my view of the method courts should use to calculate actual loss in mortgage fraud cases, and to note the injustice caused by our decision today.
I
As a general rule, actual loss is the appropriate metric in determining a defendant’s United States Sentencing Guidelines (“U.S.S.G.”) range. See U.S.S.G. § 2Bl.l(b). In mortgage fraud cases such as the one at bar, the method employed by the district court is generally proper: The court subtracted the final foreclosure price from the amount of the original loan used to purchase the property. As the majority correctly notes, for sentencing purposes, 1 “ ‘[ajctual loss’ means the reasonably foreseeable pecuniary harm that resulted from the offense.” U.S.S.G. § 2B1.1 emt. n. 3(A)(i). This commentary does not direct us to focus on harm to any particular victim; rather, it mandates that we focus on the total loss resulting from the commission of fraud to the extent the total loss is reasonably foreseeable.
In the type of scheme designed by Torrence James, the total loss resulting from the mortgage fraud — including loss to secondary lenders — is entirely foreseeable: The purpose of the scheme is to obtain loans, and then fail to make mortgage payments, inevitably leading to foreclosure. If the initial lender does not resell a mortgage, then the actual loss from a given property to that original lender equals the amount loaned less the foreclosure price.
Although we are unable to apply the principle in this case, I note that the same total loss results even if the mortgages are resold. When a mortgage is resold, a successor lender pays the amount of the original mortgage plus a markup equal to the original lender’s profit.[1] After foreclosure, the loss to the successor lender equals the price it paid minus the foreclosure sale price. However, the original lender has made a profit reselling the mortgage; to arrive at the net loss for the total transaction, the original lender’s profit must be subtracted from the successor lender’s loss. Thus the total loss is the loss to the successor lender (the original mortgage plus the original lender’s profit minus the foreclosure price) less the gain to the original lender (the original lender’s profit). Because the original lender’s profit is first added in and then subtracted out of the loss total, it cancels itself out. Thus, the total loss equals the original mortgage amount less the final foreclosure price. Moreover, no matter how many times the mortgage is resold, the total loss caused by the fraud can always be calculated as the original mortgage amount minus the final foreclosure price: The profit earned by secondary lenders who resell a mortgage will always be canceled out by a corresponding loss to the last mortgage purchaser. Thus, the number of lenders involved and the amount of profit made by the original lender or any intermediate lenders is mathematically irrelevant to the calculation of the total loss caused by the fraud.
Because the amount of the loss can always be calculated in this manner, it should always be reasonably foreseeable to the person committing the fraud. He may not foresee who will suffer the loss result *1118 ing from his fraud,[2] but he will be able to predict that a loss will be suffered and the approximate the amount of that loss.
II.
We must deviate from the general calculation of loss in this case, however, because the district court made a factual finding that the losses to secondary lenders did not constitute reasonably foreseeable pecuniary harm. On appeal, the government fails to challenge this factual finding, thus waiving any challenge to it. State Farm Fire & Cas. Co. v. Mhoon, 31 F.3d 979, 984 n. 7 (10th Cir.1994). Because the district court concluded that the loss to the secondary lenders did not constitute reasonably foreseeable pecuniary harm, it should not have considered that loss in calculating the “actual loss” for the purposes of § 2B1.1. See § 2B1.1 cmt. n. 3(A)(i). Instead, given that finding — and as the majority concludes — the sentencing court necessarily could only consider the loss to the original lenders.
Given the government’s failure to appeal this specific issue, the district court’s factual finding dictates the result in this case. The resulting sentence will fail to adequately punish James for the crimes he committed. For more than two years, James committed rampant mortgage fraud. He and his co-defendant, Ronald Fontenot, procured inflated appraisals for properties, submitted false statements to mortgage lenders in order to obtain loans based on the inflated appraisals, and kept the excess loan proceeds. James not only led the fraudulent scheme, he personally participated in the purchase of twenty properties involving ten lenders, and recruited others to participate in the fraud. He was, in other words, a professional criminal who understood mortgages and the housing market sufficiently to design a method of defrauding lenders of millions of dollars. It is unlikely that he would not have known that mortgages are routinely repackaged and resold or that secondary lenders would suffer significant losses when he and his cohorts failed to make mortgage payments on the purchased properties.
Including the loss to secondary lenders, James’ scheme caused a direct loss of nearly $3.75 million. Given the available record, we cannot know all of the economic repercussions of his fraud. We do know, however, that mortgage fraud of this kind has deeply compromised our economy and been a major factor in the current economic crisis. If, on remand, the district court uses James’ gain as an estimate of loss, his total offense level will be reduced from thirty-one to twenty-nine, lowering his sentence from 151 months’ imprisonment to a Guidelines range stretching as low as 108 months. If the district court determines that the original lenders suffered no loss at all, his sentence will be reduced still further. Such a sentence will not adequately punish James for the true economic loss caused by his fraud, let alone the damage to the lending institutions he defrauded or the broader policy repercussions this type of conduct entails.
Given the district court’s factual finding that the loss to secondary lenders was not foreseeable pecuniary harm, I concur in the result reached by the majority. I remain convinced, however, that the district court used the correct rule to calculate actual loss and that this method should be used in future cases of this kind.

. If it is resold again, the next successor lender pays the amount of the original mortgage plus a markup. The markup equals the original lender’s profit plus the second lender’s profit — and so on, no matter how many times the mortgage is resold.

. Section 2B 1.1(b) does not require a fraudfeasor to know precisely who will bear the loss caused by his wrongdoing; the section requires only that the loss itself be reasonably foreseeable. See § 2B1.1 cmt. n. 3(A)(i).