**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**NOV 13 1998**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

AMIGOS BRAVOS, a nonprofit
corporation; NEW MEXICO
CITIZENS FOR CLEAN AIR AND
WATER, a nonprofit corporation,

Plaintiffs-Appellants,

v.

MOLYCORP, INC.,

Defendant-Appellee.

No. 97-2327
(D.C. No. CIV-95-1497-JP)
(D. N.M.)

---

**ORDER AND JUDGMENT** *

---

Before **ANDERSON** , **BARRETT** , and **TACHA** , Circuit Judges.

---

After examining the briefs and appellate record, this panel has determined

unanimously to grant the parties' request for a decision on the briefs without oral

---

* This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

argument.  See Fed. R. App. P. 34(f); 10th Cir. R. 34.1.9.  The case is therefore ordered submitted without oral argument.

I.

Defendant Molycorp Inc. operates a molybdenum mine in New Mexico that discharges pollutants into the Red River.  Under the Clean Water Act (CWA), the discharge of pollutants from a point source[1] into the navigable waters of the United States is prohibited unless authorized by a National Pollution Discharge Elimination System (NPDES) permit.  See 33 U.S.C. §§ 1311(a), 1342.  Molycorp was issued an NPDES permit in 1977 covering discharges from three point sources.  Because NPDES permits are valid only for a prescribed period of time, Molycorp applied to the Administrator of the United States Environmental Protection Agency (EPA) in December 1992 for renewal of its permit.  The EPA renewed Molycorp's NPDES permit in September 1993 after adding two more point sources to those previously regulated under Molycorp's permit.  The September 1993 permit expired at midnight on October 14, 1998.

---

[1] A point source is "any discernible, confined and discrete conveyance, including but not limited to any pipe, ditch, channel, tunnel, conduit, well, discrete fissure, container, rolling stock, concentrated animal feeding operation, or vessel or other floating craft, from which pollutants are or may be discharged." 33 U.S.C. § 1362(14).

Plaintiffs are two non-profit corporations whose members are interested in protecting New Mexico's water resources. Plaintiffs brought suit against defendant under the citizen suit provisions of the CWA, alleging that pollutants were being leached from waste rock piles at defendant's mine and discharged into the Red River through ground water flow, seeps, and springs, and that the discharge of these pollutants was not authorized by an NPDES permit. See 33 U.S.C. § 1365(a) (authorizing suits by citizens against any person alleged to be in violation of an effluent limitation or standard or a federal or state order concerning such limitation or standard). Plaintiffs sought several forms of relief, including an order declaring that defendant was violating the CWA by failing to obtain an NPDES permit for these discharges, an order enjoining defendant from not complying with the CWA, and an order imposing maximum civil penalties against defendant for violating the CWA.

The district court concluded that it did not have subject matter jurisdiction over plaintiffs' claims because they should have been brought before the court of appeals in connection with the renewal of Molycorp's NPDES permit in 1993. See 33 U.S.C. § 1369(b)(1)(F) (providing for exclusive jurisdiction in the court of appeals for review of the EPA Administrator's action in issuing or denying any NPDES permit). We review the district court's dismissal for lack of subject

matter jurisdiction de novo.    Chemical Weapons Working Group, Inc. v. United

States Dep't of Army   , 111 F.3d 1485, 1491 (10th Cir. 1997).


II.

A.

To understand the issues before us, we must first examine the permit

renewal process.  An applicant seeking to renew an existing NPDES permit must

submit an application to the EPA Regional Administrator      [2] before the existing

permit expires.    See 40 C.F.R. § 122.21(d)(2).  Once the application is complete,

the Regional Administrator makes a tentative decision either to issue or to deny a

draft permit.    See id. § 124.6(a).  If the Regional Director decides to prepare a

draft permit, the EPA will issue the draft permit and an explanatory fact sheet.

See id. §§ 124.6, 124.8, 124.56.  The Regional Administrator also must give

public notice that a draft permit has been prepared and must allow at least thirty

days for public comment.    See id. § 124.10(a)(1)(ii),(b).  During the public

comment period, any interested person may submit comments on the draft permit

and may request a public hearing if no hearing has been scheduled.      See id.

§ 124.11.  Anyone who believes that any condition of a draft permit is

---

[2]     When, as here, the permitting process is administered by the EPA rather
than the state, the Regional Administrator stands as the "Director" referred to in
the regulations.    See 40 C.F.R. § 124.2(a).

-4-

inappropriate must raise all reasonably ascertainable issues and arguments in support of his position before the end of the comment period. See id. § 124.13.

After the close of the public comment period, the Regional Administrator makes a final decision either to issue, deny, modify, revoke and reissue, or terminate a permit. See id. § 124.15. This decision must be based upon the administrative record, which must be complete by the date the final permit is issued. See id. § 124.18. The Regional Administrator must consider all public comments in making his final decision and must issue a response to all significant comments at the time the final permit decision is issued. See id. §§124.11, 124.17(a)(2).

The procedural regulations governing the public comment period "are intended to alert the EPA to potential problems with the draft permit and to ensure it has an opportunity to address those problems before the permit becomes final." Adams v. United States EPA, 38 F.3d 43, 51 (1st Cir. 1994). In promulgating the regulations, the EPA "anticipated that most policy and technical issues would be decided as part of the public comment period, which is the most open, accessible forum possible and which comes at a stage where the Agency has the greatest ability to modify a draft permit." Id.

Within thirty days of the final permit decision, any interested person may request an evidentiary hearing to reconsider or contest that decision. See

40 C.F.R. § 124.74(a). The Regional Administrator will then decide whether to grant a hearing. See id. § 124.75(a). If the Regional Administrator denies a hearing, an appeal may be taken to the Environmental Appeals Board. See id. §§ 124.75(b), 124.91. If the Appeals Board denies review, the Regional Administrator's previous decision becomes final. See id. §§ 124.60(c)(5), 124.91(f)(1). Once an NPDES permit decision has become final, any interested person may petition the United States Court of Appeals for review of the decision. [3] See 33 U.S.C. § 1369(b)(1).

B.

During the period of public comment on Molycorp's draft permit, the EPA received numerous comments about Molycorp's discharge of pollutants into the Red River via ground water and seeps, and the need to regulate these discharges under the NPDES permit program. Several commenters requested that the EPA hold a public hearing on the draft permit. The most comprehensive comment was submitted by the Land and Water Fund, which specifically argued that seeps draining from the waste rock piles should be regulated under the NPDES permit

---

[3] Although an issue must be raised during the public comment period to be preserved for review, the person petitioning for judicial review need not be the same person who raised the issue during the comment period. See Adams, 38 F.3d at 52 n.7.

program.  The Land and Water Fund also expressed concerns about water draining

from the waste rock piles into the mine's upper underground workings, which

might then discharge into the Red River without ever reaching the surface.

The EPA issued Molycorp's final NPDES permit without holding a public

hearing and without including in the permit the discharges at issue here.  In its

response to comments, the EPA explained its position as follows:

> Response No. 9:
>
> While EPA understands the concern of these commenters for the possible impact of ground water seepage on the Red River, we do not agree that these are "point sources" under the NPDES permitting program.  Ground water is regulated by the State through the [New Mexico Environment Department].
>
> We are familiar with the case law citation [4] which relates to EPA authority to require construction and control of surface discharges (proscribed "point sources" of pollution) in instances where the operator has not applied the proper control and construction to the sources.  However, the issue of seepage of groundwater which may have infiltrated through porous soil is a different matter.  We recommend that the commenters continue to pursue this issue through the [New Mexico Environment Department].

Appellant's App., Vol. I at 110.  None of the commenters sought further

administrative or judicial review of the EPA's final permit decision.

---

4    Some of the comments cited Sierra Club v. Abston Construction Co., 620 F.2d 41 (5th Cir. 1980), as support for the contention that seepage from mining pits and collection ponds is subject to regulation under the NPDES permitting program.

C.

The district court examined the issues raised in the permitting process to decide whether it had jurisdiction over the present action.  The court determined that, "[w]ithout question, the EPA made a decision that Molycorp did not need a permit for any ground water seepage into the Red River, regardless of whether Molycorp's operations polluted the ground water and, eventually, the river.  Because of this determination, the permit that the EPA reissued to Molycorp contained no regulation of ground water seepage."     Id. at 34.  The court also concluded that, "[a]t its core, plaintiffs' complaint attacks the EPA's decision to reissue Molycorp's NPDES permit without regulating ground water seepage into the Red River."   Id.   Therefore, the court held that plaintiffs should have been brought their claims in a petition for review under 33 U.S.C. § 1369(b)(1)(F), and could not now litigate their claims in the district court under the citizen suit provisions.

III.

On appeal, plaintiffs contend that the 1993 permitting process would not have provided them a proper basis for seeking judicial review of their claim that Molycorp is violating the CWA by discharging pollutants from its waste rock piles without an NPDES permit.  Plaintiffs focus primarily on the language of

33 U.S.C. § 1369(b)(1)(F), which provides for "[r]eview of the Administrator's action . . . in issuing or denying any [NPDES] permit," and advance several arguments in support of their theory.  [5]

First, plaintiffs argue that the EPA could not have taken any "action" on the waste rock pile discharges during the permit renewal process because the agency did not follow all the procedures necessary to include these discharges in the final NPDES permit.  The EPA's failure to include the waste rock pile discharges in the initial draft permit or accompanying fact sheet did not preclude the agency from making a decision about the propriety of regulating these discharges, however.  That the regulations provide for public comment and subsequent modification of the draft permit, if necessary, reflects an expectation that the initial draft permit and fact sheet may not consider everything that will ultimately be included in the final permit.  See id. §§ 124.14(b), 124.15.  Further, if plaintiffs are correct that the public comments raised "substantial new questions" that should have prompted the EPA to take further action under 40 C.F.R. § 124.14(4)(b), plaintiffs could have challenged the agency's failure to take such

[5]      In the district court, plaintiffs argued that it would be unjust to prohibit them from pursuing the present suit because they did not actually participate in the public comment process in 1993.  The district court rejected this argument, and plaintiffs' opening brief does not challenge this aspect of the district court's ruling.  Therefore, we will deem the issue waived.      See State Farm Fire & Cas. Co. v. Mhoon , 31 F.3d 979, 984 n.7 (10th Cir. 1994).

-9-

action had they sought administrative and judicial review of the final permit decision. See, e.g. , Webb v. Gorsuch , 699 F.2d 157, 158-59 (4th Cir. 1983) (reviewing challenges to EPA's response to comments and its failure to hold public hearing).

Next, plaintiffs argue that Response No. 9 concerned on ground water issues other than discharges from the waste rock piles and, therefore, the agency did not actually consider the discharges at issue here. Our examination of the public comments and the EPA's response thereto shows otherwise. Moreover, because the issue of waste rock pile drainage was raised in the public comments, plaintiffs could have challenged any failure to adequately address this issue had they sought review of the final permit decision. See Adams , 38 F.3d at 52 (discussing EPA's duty to respond to public comments).

Third, plaintiffs argue that the EPA did not take any "action" on the waste rock pile discharges because Response No. 9 neither issued, denied, nor required an NPDES permit for these discharges, nor threaten any such action. Plaintiffs also contend that judicial review of the decision stated in Response No. 9 would not have been appropriate because "[n]one of the specific clauses enumerated in 33 U.S.C. § 1369(b)(1) actually describe EPA's issuance of responses to comments." Appellant's Opening Br. at 24.

Again, plaintiffs misunderstand the procedural scheme. Once the EPA took final action by issuing the NPDES permit, the decisions the EPA made about the issues raised in the public comments became reviewable under 33 U.S.C. § 1369(b). See Webb, 699 F.2d at 161-62 (reviewing EPA's response to comments); cf. 5 U.S.C. § 704 ("A preliminary, procedural, or intermediate agency action or ruling not directly reviewable is subject to review on the review of the final agency action."); Citizens for Clean Air v. United States EPA, 959 F.2d 839, 846 (9th Cir. 1992) (reviewing adequacy of EPA's response to petitioner's comments). The cases plaintiffs cite to establish that judicial review under § 1369(b) would have been premature are inapposite; they involve no final agency action whatsoever. See, e.g., Appalachian Energy Group v. EPA, 33 F.3d 319, 321-22 (4th Cir. 1994) (declining to exercise jurisdiction over petition seeking review of internal EPA memorandum that did not involve or relate to any decision to issue or deny a permit).

Finally, plaintiffs argue that Response No. 9 did not correctly state the EPA's actual position on ground water discharges that are hydrologically connected to surface water. The accuracy of the statements in Response No. 9 is irrelevant to the jurisdictional question at issue here. If the position the EPA stated in Response No. 9 conflicted with the position it had stated elsewhere,

plaintiffs could have challenged this discrepancy through administrative and judicial review of the final permit decision.

IV.

In sum, we agree with the district court that plaintiffs should have pursued their present claims during the 1993 permit renewal process. Having failed to do so, plaintiffs may not now use the vehicle of the CWA's citizen suit provisions to challenge Molycorp's discharge of pollutants from its rock waste piles without an NPDES permit.

The judgment of the United States District Court for the District of New Mexico is AFFIRMED. Defendant's motion to strike Volume II of Appellants' Appendix is DENIED as moot.

Entered for the Court

James E. Barrett
Senior Circuit Judge

-12-