MICHIGAN CONSOLIDATED GAS CO. v. PANHANDLE EASTERN PIPE LINE CO.

No. 7706.

United States District Court
E. D. Michigan, S. D.

Jan. 6, 1949.

Dyer, Angel, Meek & Batten and Walter M. Meek, all of Detroit, Mich., for plaintiff.

William E. Dowling, of Detroit, Mich., Robert P. Patterson and John S. L. Yost, both of New York City, and Samuel Riggs, of Detroit, Mich., for defendant.

KOSCINSKI, District Judge.

The complaint makes the following allegations:

Plaintiff is a Michigan corporation and is a public utility company engaged in the distribution of gas, including natural gas, for domestic, commercial, industrial and other consumer uses of such gas, and since September 19, 1938 has operated as such a utility in Ann Arbor, Michigan, serving the public of that city and adjoining territory.

The defendant is a Delaware corporation authorized to do business in Michigan, producing natural gas in Kansas and Texas and purchasing natural gas produced by others in Texas, Oklahoma and Kansas.

On or about April 20, 1937, a contract was entered into between Michigan Gas Transmission Corporation, then affiliated with the defendant, and Washtenaw Gas Company for the delivery and sale of natural gas by Michigan Gas Transmission to Washtenaw Gas Company; subsequently, further agreements supplementing this contract were entered into by the interested parties. All of the rights and obligations of the Michigan Gas Transmission Corpo-

ration under said contract, as supplemented by later agreements, were transferred to and assumed by the defendant. Also, subsequent to April 20, 1937, all of the rights and obligations of the Washtenaw Gas Company under said contract, as supplemented by later agreements, were transferred to and assumed by the plaintiff.

In pursuance of the contract, as supplemented by later agreements, defendant agreed to supply the plaintiff with such quantity of gas as would meet its needs and requirements, although there was a clause in the original contract limiting the supply of gas by defendant to plaintiff to 2,000,000 cubic feet per day, due to defendant's inability to deliver more at that time. Later, however, and up to the time of the filing of this suit, defendant has been supplying plaintiff with all the requirements needed to serve its customers in the Ann Arbor area, and for several years prior to this suit the defendant has been supplying the plaintiff with 5,500,000 cubic feet of gas per day, rather than 2,000,000 cubic feet per day, since the contract for many years has been regarded and acknowledged by both of these parties as an agreement on the part of the defendant to furnish to the plaintiff all of its gas requirements, regardless of the amount of same.

That the Federal Power Commission has recognized the existing contract, as supplemented by later agreements, as a "requirement" contract, under which the defendant is obligated to furnish to plaintiff all of plaintiff's requirements for gas to be furnished to plaintiff's customers at Ann Arbor, Michigan, regardless of the amount thereof; that, relying upon the conduct of the defendant, it had, since the execution of the contract, as supplemented by later agreements, supplied gas to more than two thousand customers of the plaintiff at Ann Arbor who have installed equipment for heating of their homes and places of business through the use of natural gas furnished by the defendant, and that such customers are absolutely and entirely dependent upon the supply of natural gas furnished by the defendant for the heating of their homes and places of business. Furthermore, in reliance upon the conduct of the defendant, a number of industrial

firms at Ann Arbor have installed equipment for the use of natural gas, and that those industrial firms have installed equipment for use of natural gas furnished by the defendant in industrial processes and that they are absolutely and entirely dependent for power to operate such processes upon the natural gas furnished by the defendant; that the daily total requirement of plaintiff's customers at Ann Arbor for commercial, industrial space heating and domestic purposes during the cold days of the winter season have exceeded 5,500,-000 cubic feet, which amount of gas has, for a period of many years, been furnished by the defendant in accordance with plaintiff's said customer requirements; that the plaintiff has installed at Ann Arbor facilities for manufacturing certain quantities of manufactured gas to be used to supply plaintiff's customers at Ann Arbor in case of emergency, but the capacity of such facilities is not sufficient to make up the difference between the requirements of plaintiff's said customers and 2,000,000 cubic feet per day; that defendant has advised plaintiff that it proposes in the immediate future to take action to limit the natural gas supplied by it to the plaintiff for use of plaintiff's customers at Ann Arbor to 2,-000,000 cubic feet per day and that the defendant will do so unless prevented by an injunction of this court.

That, furthermore, plaintiff has a reason to believe that the defendant proposes to accomplish its purposes by installation of flow controllers in its pipe line system and so limit the deliveries of gas to plaintiff to 2,000,000 cubic feet per day; that if this is done, plaintiff will suffer great and irreparable injury to its business and great and irreparable hardship will result to plaintiff's customers at Ann Arbor, and that plaintiff's customers, domestic, industrial and commercial, will be unable to obtain sufficient heat for their homes and their businesses and their industrial pursuits.

That, under the provisions of the Natural Gas Act, 15 U.S.C.A. § 717, et seq., defendant is required to secure a certificate of public convenience and necessity from the Federal Power Commission before installing flow controllers, as above referred to; that no such authority has been granted by the Federal Power Commission to the defendant to install such flow controllers so as to limit the deliveries of gas by the defendant to the plaintiff for use at Ann Arbor.

Such are, substantially, the allegations of the complaint.

Plaintiff prays for a temporary injunction restraining the defendant and all its agents and representatives, during the pendency of this suit, from limiting the deliveries of gas by the defendant to the plaintiff for use at Ann Arbor, Michigan, so that such deliveries are less than the daily requirements of plaintiff's customers at such city, and restraining defendant from installing flow controllers to limit the deliveries of gas by the defendant to the plaintiff for use of plaintiff's customers at Ann Arbor, Michigan, unless and until a certificate of public convenience and necessity is issued therefor by the Federal Power Commission; and that upon the final hearing of this cause the temporary injunction requested be made permanent.

The complaint in this cause was filed by plaintiff in the Washtenaw County Circuit Court. Without answering, defendant removed the suit to this court alleging diversity of citizenship and the necessary statutory amount involved. Immediately after removal, defendant filed a motion to dismiss plaintiff's complaint on the grounds, (1) because the complaint fails to state a claim against the defendant upon which relief can be granted, and (2) that this court lacks jurisdiction over the subject matter.

The defendant admits it served notice on plaintiff that upon the expiration of this emergency order it will curtail the supply of gas to plaintiff to 2,000,000 cubic feet per day.

■ A complaint should not be dismissed on motion without a hearing on merits unless it appears to a certainty that plaintiff would be entitled to no relief under any state of facts which could be proved in support of his claim. On a motion to dismiss, the well pleaded facts are to be taken as true.

■ The situation presented here involves the adjudication of the rights of the respective parties under the contract in

question, as modified or extended by any supplemental agreements. This is a judicial question and one which only a court can decide. If the court here has jurisdiction of the subject matter or, in other words, if it has the power to grant the relief requested, the complaint does state a cause of action and the plaintiff would be entitled to a hearing on the merits.

The crucial question before the court is the determination of its own jurisdiction to hear and adjudicate the matters here involved.

The defendant contends that this court is without jurisdiction and that all authority to regulate sales of natural gas was given by Congress to the Federal Power Commission under the Natural Gas Act.

Sections 717(a) and 717(b) of the Act express the policy of Congress in enacting the law. Under Section 717(a) "the business of transporting and selling natural gas for ultimate distribution to the public is affected with a public interest, and that Federal regulation in matters relating to the transportation of natural gas and the sale thereof in interstate and foreign commerce is necessary in the public interest", and by Section 717(b) "this Act shall apply to the transportation of natural gas in interstate commerce, to the sale in interstate commerce of natural gas for resale for ultimate public consumption for domestic, commercial, industrial, or any other use, and to natural-gas companies engaged in such transportation or sale, but shall not apply to any other transportation or sale of natural gas or to the local distribution of natural gas or to the facilities used for such distribution or to the production or gathering of natural gas."

While it is undoubtedly true, as the Supreme Court stated, in Public Utilities Commission of Ohio v. United Fuel Gas Company, 317 U.S. 456, 63 S.Ct. 369, 87 L.Ed. 396, that Congress by this chapter preempted the regulatory powers over the transportation and sale of natural gas in interstate commerce, it has not said in any case that the Federal Power Commission has been given the right by Congress to resolve or adjudicate claimed contractual obligations relating to the amount of gas to be sold and delivered by a natural gas company to a distributor of the gas. It is clear that the regulatory powers of the Commission are restricted to rates and charges, Sections 717c, 717d, 717e; to the issuance of certificates of public convenience and necessity for new or additional installations or facilities for gas supply services, Section 717f; and abandonment of such installations and facilities for gas services because of depleted gas reserves. But the quantity or amount of gas to be furnished by a natural gas company to a distributing company is a matter of agreement or contract between the supplier and the distributor of such gas upon mutually satisfactory terms, subject only to approval by the Commission of price and rate schedules and kind of service, to be filed with the Commission where subject to the authority of the Commission under the Act.

The plaintiff in this case, in effect, seeks the specific performance of an agreement for the delivery of natural gas supplies. The court holds that this involves a judicial action and is a matter to be decided by a court and not by an administrative body such as the Federal Power Commission. In a parallel case it was stated:

"The Interstate Commerce Commission is an administrative board * * * and is not a 'court' and has no judicial power. * * * [It] is not empowered to enforce contracts, that being a matter for courts. * * * A suit in equity to compel specific performance of a contract is in its nature a judicial action, and court otherwise having jurisdiction may not refuse to take cognizance thereof because of mere possibility that questions involved might be brought before an administrative tribunal. * * * The mere fact that a contract * * * is subject to approval of a public agency is not a bar to a decree compelling a party thereto to execute documents necessary for consummation of contract." Watson Brothers Transportation Company v. Jaffa, 8 Cir., 143 F.2d 340. This case is cited with approval in United States v. Arkansas Power and Light Company, Cir., 165 F.2d 354, 357. See also Louisville & Nashville Railroad Company v. F. W. Cook Brewing Company, 223 U.S. 70, 71, 32 S. Ct. 189, 56 L.Ed. 355.

Recently, the Federal Power Commission, in granting the Michigan-Wisconsin Pipe Line Company a certificate of public convenience and necessity to construct and operate a natural gas pipe line from a point in the Hugoton field in Hansford County, Texas, to the Austin storage field in Michigan, and to other points, did so on express " 'terms and conditions' for the affirmative protection of Panhandle", in these words: "(1) That Panhandle is permitted to deliver natural gas to Michigan Consolidated in accordance with the terms and conditions of its existing contracts during the life of such contracts, and (2) that upon the termination of such contracts, and upon *mutually satisfactory terms* (italics supplied), Panhandle is afforded reasonable opportunity to deliver and sell to Michigan Consolidated *not less* than the annual volumes of gas delivered and sold by it for either the years 1942 or 1945 or the average delivered for the five-year period 1942 through 1946. Further, Panhandle shall have the right to participate in the future growth of the Detroit and Ann Arbor markets by being given the opportunity to deliver and sell such additional volumes of gas to Michigan Consolidated as the latter may require in excess of the volumes of gas then being contractually purchased by it from Panhandle and Michigan-Wisconsin, in order to maintain adequate service to consumers in the Detroit and Ann Arbor districts." Panhandle Eastern Pipe Line Company v. Federal Power Commission, D.C. Cir., 169 F.2d 881, 884.

Since price and rate schedules and type of service must be approved by the Commission, there is a strong inference here that the words "mutually satisfactory terms" relate to the amount of gas to be agreed upon by the contracting parties, who are the plaintiff and defendant in this case. It is a recognition of the rights of these parties to make agreements as to amount of gas to be sold and delivered by one to the other.

■ It appeared at the oral argument on the motion to dismiss that the Federal Power Commission has been able from time to time to obtain the cooperation of and assist the natural gas companies and public utilities in making voluntary arrangements

conserving the available natural gas supplies for home users of natural gas, to the exclusion or curtailment of industrial users. This practice, however, cannot be used as a basis for reading into the Natural Gas Act powers which were withheld from the Commission by Congress. An attempt was made in the second session of the 80th Congress to give the Commission the authority which it had hitherto lacked. The amendment would have clothed the Commission with authority to enforce reasonable contract obligations on the part of natural gas companies for the supply of natural gas to utility companies. It is interesting to note in the report of hearings on H.R. 4051, second session 80th Congress, before a sub-committee of the Committee on Interstate and Foreign Commerce, in the United States Senate from February 4 to 18, inclusive, 1948, especially pages 99, 100, and pages 470 to 478, inclusive, that the Chairman of the Federal Power Commission urged the adoption of the proposed amendments to the Natural Gas Act which would give the Commission the authority to act in a situation like the one presented by plaintiff's complaint herein. The bill died in committee.

The court finds, therefore, that the plaintiff's complaint states a cause of action and that this court has jurisdiction to hear and decide plaintiff's claim on the merits. The defendant's motion is therefore overruled and the defendant is given twenty days from the date hereof to answer plaintiff's complaint.

■ Deprivation of a large segment of the population of the Ann Arbor area of natural gas supplies will inevitably result in severe hardship and suffering not only to home owners but to industrial and business concerns as well. If such disastrous conditions can be averted by the issuance of a preliminary injunction by this court, the court should not hesitate to do so. Accordingly, plaintiff will have preliminary injunction requested upon filing security to indemnify the defendant in an amount to be fixed by the court upon notice.

The preliminary injunction shall restrain the defendant from limiting plaintiff's natural gas supplies to less than its daily re-

quirement up to 5,500,000 cubic feet of natural gas, and further restrain the defendant from installing flow controllers for the purpose of so limiting plaintiff's gas supplies to less than the said daily requirements, until the further order of this court.