**PANHANDLE EASTERN PIPE LINE CO.**
**v. MICHIGAN CONSOLIDATED**
**GAS CO.**

No. 10910.

United States Court of Appeals
Sixth Circuit.

Nov. 28, 1949.

Robert P. Patterson, New York City, Wm. E. Dowling, Detroit, Mich., Samuel H. Riggs, Detroit, Mich., on the brief; Robert P. Patterson, New York City, Robert M. Morgenthau, New York City, of counsel, for appellant.

Walter M. Meek, Detroit, Mich., Dyer, Angell, Meek & Batten, Walter M. Meek, Detroit, Mich., Frank B. DeVine, Ann Arbor, Mich., on the brief, for appellee.

Before SIMONS, ALLEN and McALLISTER, Circuit Judges.

SIMONS, Circuit Judge.

As in our case of Michigan Consolidated Gas Co. v. Panhandle Eastern Pipe Line Company and Federal Power Commission et al., 6 Cir., 173 F.2d 784, the present controversy involves a consideration of the regulatory powers of the Federal Power Commission under the Natural Gas Act, 15 U.S.C.A. § 717 et seq., although there is brought into the case, upon appeal, an issue respecting the right of the appellee, as a distributor, to a declaratory judgment defining the obligations of the Pipe Line Company under a written contract with it. The major issue, however, is the validity of a temporary injunction granted in the court below to prevent curtailment of gas delivery from the pipe line to the distributor. The earlier case dealt with deliveries to the Detroit district while the present case involves deliveries at Ann Arbor.

The complaint of Consolidated filed originally in a Michigan court but thereafter removed to the District Court of the United States because of diversity, was filed in October, 1948. Upon the removal of the cause Panhandle moved to dismiss it on the ground that it failed to state a claim on which relief could be granted, and on the ground that the district court lacked jurisdiction of the subject matter because the alleged grievance was within the exclusive jurisdiction of the Federal Power Commission. The complaint prayed for specific performance of a 1937 contract, and for temporary and permanent injunctions to compel deliveries of gas in pursuance of Consolidated's asserted interpretation of the contract. The contract provided that the seller should not be required to supply more than 2,000,000 cubic feet of natural gas, or its equivalent, in any one day, and also provided that there should be no modification of its terms and provisions except by the execution of supplementary written contracts. While a number of supplementary contracts were later entered into no one of them modified this limitation. The complaint alleged, however, that notwithstanding the limitation Panhandle had for years delivered to Consolidated quantities in excess of that amount, and that the contract had been regarded and acted upon as a full-requirements contract and was so recognized by the Commission; that customers had installed gas-burning equipment in reliance upon Panhandle's conduct in supplying Consolidated with all of its requirements, which during the cold days of winter exceeded $5\frac{1}{2}$ million cubic feet per day. While Consolidated has facilities for manufacturing gas, their capacity is not sufficient to make up the difference between its needs and the limitation of the formal agreement. The complaint further alleged that Panhandle intended to limit deliveries of natural gas at Ann Arbor to 2,000,000 cubic feet a day, and to accomplish this purpose by installing flow controllers; that this would cause irreparable injury to both Consolidated and its customers, and that Panhandle had failed to obtain from the Commission a certificate of public convenience and necessity for the installation of flow controllers as it was required to do by the Natural Gas Act. The relief prayed was, by injunction, both temporary and permanent to restrain Panhandle from limiting deliveries to Consolidated to less than the daily requirements of its customers, and to restrain it from installing flow controllers.

At a hearing on December 6, 1948, of Panhandle's motion to dismiss, it submitted to the court an order of the Federal Power Commission of October 28, 1948, in a proceeding entitled "In the Matter of Panhandle Eastern Pipe Line Company, Docket No. G-1141," which prescribed several rules and regulations for deliveries to customers by the Panhandle system for the period from November 1, 1948, to April 30, 1949. This order provided for daily delivery to

944

Consolidated at Ann Arbor of 5,782,000 cubic feet of gas. In a colloquy with the court at this hearing, counsel for Consolidated conceded that it was getting all the gas it then needed and would get it throughout the winter, and at a further hearing on December 13, he advised the court as follows, "I say so long as this order of the Commission is in effect, we are protected." On January 6, 1949, the district court announced in an opinion that it had jurisdiction to decide the case on its merits, and that a preliminary injunction should issue. No findings were made as required by Federal Rules of Civil Procedure, rule 52(a), 28 U.S.C.A., as to interlocutory injunctions. On February 14, 1949, the court entered two orders, the first overruling Panhandle's motion to dismiss, the second, an injunctional order restraining Panhandle from limiting Consolidated's gas supply to less than its daily requirements up to 5½ million cubic feet, and from installing flow controllers.

When the court announced its opinion on January 6, 83 F.Supp. 34, the Detroit case had not yet been decided, and it was uninformed of our view upon the scope of Commission authority. It reasoned that the situation presented to it involved the adjudication of the rights of the respective parties to a contract, and that this was a judicial question which only a court could decide. It held that, taking the well pleaded facts as true, the complaint stated a cause of action and it rejected the argument that authority to regulate sales of natural gas was given by Congress to the Federal Power Commission. It held the regulatory powers of the Commission restricted to rates and charges, to the issuance of certificates of public convenience and necessity for new or additional facilities, and for abandonment of such facilities because of depleted gas reserves, but that the quantity or amount of gas to be furnished by a natural gas company to a distributing company is a matter of agreement which may be specifically enforced by the court.

That, where there is controversy as to the meaning and effect of a written contract interpretation may be sought from and made by the declaratory judgment of a court having jurisdiction over the parties, there is no doubt. The granting of a declaratory judgment, however, depends upon the exercise of a sound judicial discretion and is conditioned upon statutory requirement and adjudicated principles. Section 2201, Title 28 U.S.C.A., Federal Judicial Code, the section which defines the remedy, requires the filing of an appropriate pleading by any interested party seeking such declaration.

The complaint here involved does not seek a declaratory judgment either in express terms or by inescapable inference. The complaint is in the usual form of a bill for specific performance of an alleged contract. A doctrine conditioning the exercise of discretion in granting a declaratory judgment that is to be derived from the cases, is that no declaration should be made unless it serves a useful, practical purpose. United States v. Jones, 9 Cir., 176 F.2d 278; Aetna Casualty & Surety Co. v. Quarles, 4 Cir., 92 F.2d 321; Smith v. Massachusetts Mutual Life Insurance Co., 5 Cir., 167 F.2d 990. As said by Professor Borchard (Declaratory Judgments, 107-109), cited by Judge Parker, in the Aetna Casualty case, 92 F.2d 325, "The two principal criteria guiding the policy in favor of rendering declaratory judgments are (1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." Whether Consolidated must be held strictly to the requirement for an appropriate pleading and whether, if so, the judgment sought will serve any useful purpose, depends upon our determination of the challenge to the injunctional order.

In the Detroit case we were of the view that the Commission had power to prescribe emergency service rules and regulations with respect to deliveries of gas by a pipe line company to a distributor without regard to contract requirements, and that adequacy and impartiality of service in the light of existing circumstances is within Commission control. The orders there involved were, by Consolidated, conceded to be valid for the purposes of that case, and certiorari

was not sought to review our decision. We there concluded that there was primary jurisdiction in the Commission to regulate the service of the Pipe Line Company and that the court could not interfere unless the Commission's regulatory powers had first been invoked. In the present case there was in effect at the time the injunction was sought, an order of the Commission requiring the Pipe Line Company to furnish Consolidated with gas in excess of the amount here sought, and by the injunctional order required. Consolidated does not challenge the validity of that order. It advised the court that so long as it was in effect it was protected. It so advises us. When challenged by the court below as to whether the Federal Power Commission would have the right to nullify a decree or finding of the court, it advised the court that it could make a decree, the observance of which would be conditioned upon later orders of the Commission. It takes the same position here. It says to us that Consolidated will be entirely satisfied with a declaratory judgment construing the contract in pursuance of its own interpretation. It says, "Appellant has no thought of requiring Panhandle to deliver more than it is legally obligated to deliver. We see no reason to think that Panhandle will not willingly make full delivery when the extent of its legal obligations is once determined."

■■ We held in the Detroit case that adequacy and impartiality of service in the light of existing circumstances are within Commission control. We have no reason to change our view because of the arguments here advanced. Further consideration of § 7(b), 15 U.S.C.A. § 717f(b), confirms our view. That section provides that "No natural-gas company shall abandon all or any portion of its facilities subject to the jurisdiction of the Commission, or any service rendered by means of such facilities, without the permission and approval of the Commission first had and obtained, after due hearing, and a finding by the Commission that the available supply of natural gas is depleted to the extent that the continuance of service is unwarranted, or that the present or future public convenience or necessity permit such abandonment." It will

be observed that not only is a natural-gas company forbidden to abandon facilities without the approval of the Commission, but it is also prohibited from abandoning any service rendered by means of such facilities without its approval. We think it is inescapable, from the provisions of this section, that a reduction in the quantity of gas delivered or the installation of controls to permit such reduction is, if not an abandonment of a portion of the Pipe Line's facilities, certainly an abandonment of *any service* rendered by means of such facilities, and that the regulatory powers of the Commission extend to the proposed reduction of service by Panhandle and upon which Consolidated claimed its right to injunction.

■■ It must be accepted as true, that Panhandle did not seek and obtain a certificate of convenience and necessity for the reduction of service or the installation of controls, but in the light of our former reasoning relief should have been sought from the Commission, and, if denied, by such review of the Commission's order as is permitted by § 19 of the Natural Gas Act, or possibly by some other proceeding. The Commission is, of course, empowered to seek enforcement of its orders in any District Court of the United States under § 20 of the Act. This being our view we think that the temporary injunction was improvidently granted. It is axiomatic that the strong arm of equity should not interpose the extraordinary remedy of injunction where there is available a plain and adequate statutory remedy. Other reasons contribute to our conclusion. It was assumed by the court below that the 1948 allocation order of the Commission was approval of Consolidated's interpretation of the contract as a full-requirements contract. There is no reason for such assumption. As we have already seen, it is within the Commission's power to regulate service by emergency orders without respect to contract obligations. Moreover, the granting of the injunction must reasonably have been based upon an assumption that the Commission would not, upon proper invocation, re-enact its 1948 or a comparable order for allocation of supply to serve needs at Ann Arbor. Nothing in the pleadings supports an inference that

the Commission would deny relief. No fear of such result is there expressed. Finally, the suggestion that a decree should be entered conditioned in its operation upon some future order of the Commission, does not qualify as a judgment declaring the legal relations of the parties because it does not relieve them from uncertainty, insecurity and controversy, and as said in our earlier opinion, a decree that may be nullified by the determination of an administrative Commission impairs public confidence in the judicial process.

The injunctional order will be set aside on the ground that the court was not presently vested with jurisdiction to grant it, and in any event, on the ground that the granting of it exceeded sound judicial discretion. The order denying the motion to dismiss was not a final order. The case is still open upon the prayer for general relief, which may include, upon proper pleading, a prayer for construction of the contract, if Consolidated conceives itself entitled to some process other than the temporary injunction here overruled.

Reversed and remanded to the district court for further proceedings in conformity herewith.