**QQC, INC., Pravin Mistry, and Manuel Turchan, Plaintiffs/Counter–Defendants,**

v.

**HEWLETT–PACKARD COMPANY, Defendant/Counter–Claimant.**

No. CIV. 02–40201.

United States District Court,
E.D. Michigan,
Southern Division.

April 16, 2003.

Gregory L. Curtner, Frederick R. Juckniess, Miller, Canfield, Ann Arbor, for QQC, Incorporated, Pravin Mistry, President, Manuel Turchan, CEO, plaintiffs.

Ann Marie Uetz, Jenice C. Mitchell, Foley & Lardner, Detroit, Sharon R. Barner, Foley & Lardner, Chicago, IL, for Hewlett–Packard, Incorporated, defendant.

## OPINION AND ORDER

GADOLA, District Judge.

This civil action is a dispute over the ownership of intellectual property. Before the Court is Defendant's Motion to Dismiss Counts VII, VIII, and IX of Plaintiffs' Amended Complaint. Also before the Court is Plaintiffs' Motion to Dismiss Counterclaim. Both sides filed timely Responses and Reply Briefs to the respective Motions. The Court elects to proceed without a hearing. *See* E.D. Mich. LR 7.1(e)(2). For the reasons set forth below, the Court will grant Defendant's Motion and deny Plaintiffs' Motion.

## I. BACKGROUND

Plaintiff Mistry and Plaintiff Turchan formed Plaintiff QQC in 1993. Plaintiff Mistry and Plaintiff Turchan serve as Plaintiff QQC's president and chief executive officer, respectively. Plaintiffs research and develop technologies, including a system that creates coatings of durable carbon-based material on other objects. This coating material is commonly known as "diamond-like carbon" or "DLC."

Defendant is also a technology research and development firm. As part of its business, Defendant manufactures and sells computers and computer-related equipment including "inkjet printers" and the ink cartridges used by such printers. In the mid–1990s, Defendant identified DLC technology as one of several technologies that might improve printer performance. Defendant subsequently approached Plaintiffs regarding Plaintiffs' knowledge of DLC technology and its possible application to Defendant's inkjet technology.

The parties executed a Development Agreement in September 1997, and it remained in effect until at least February 1999. The Development Agreement primarily concerned the applicability of Plaintiffs' DLC technology to Defendant's inkjet technology. However, the Development Agreement also specifically contemplated that Plaintiffs and Defendant would also explore non-DLC solutions in the inkjet field and/or DLC solutions in other devices, methods, or technologies beyond the inkjet field.

Plaintiffs' Amended Complaint concerns disputes arising out of the Development Agreement and related contracts. Plaintiffs aver that Defendant has wrongfully taken ownership of certain inventions discovered and created by Plaintiffs. The Amended Complaint contains thirteen counts. Counts I and II present claims for breach of contract and breach of confidentiality agreements, respectively.

Counts III, IV, V, and VI claim misappropriation of trade secrets. Count VII alleges fraud; Count VIII alleges silent fraud; and Count IX alleges constructive fraud. Count X advances an unjust enrichment claim. Counts XI and XII request correction of patent inventorship pursuant to 35 U.S.C. §§ 116 and 256. Finally, Count XIII seeks declaratory relief pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201–02. Plaintiffs' state law claims are properly before this Court because all of the requirements of diversity jurisdiction, 28 U.S.C. § 1332, have been met. Defendant responded to the Amended Complaint with, *inter alia*, a Counterclaim that also prays for declaratory judgment.

Defendant's Motion requests dismissal of Plaintiffs' fraud, silent fraud, and constructive fraud claims in Counts VII, VIII, and IX pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Likewise, Plaintiffs' Motion seeks dismissal of Defendant's Counterclaim pursuant to Rule 12(b)(6).

## II. CONSIDERATION OF DEVELOPMENT AGREEMENT

To adjudicate a Rule 12(b)(6) motion, the Court must not consider matters outside the pleadings. *See* Fed.R.Civ.P. 12(b); *Ramik v. Darling Int'l, Inc.*, 60 F.Supp.2d 680, 683 (E.D.Mich.1999) (Gadola, J.) ("If, on a motion pursuant to Rule 12(b)(6), matters outside the pleadings are presented to and not excluded by the court, 'the motion shall be treated as one for summary judgment.'" (quoting Fed. R.Civ.P. 12(b))).

Nevertheless, Rule 10(c) of the Federal Rules of Civil Procedure provides that "[a] copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes." Rule 10(c) is permissive, however, and a plaintiff is not obligated to attach to the complaint the written instru-

ment upon which the action is premised. *See Weiner v. Klais & Co., Inc.*, 108 F.3d 86, 89 (6th Cir.1997). Nonetheless, if the plaintiff fails to attach the written instrument upon which he relies, the defendant may introduce the pertinent exhibit. *Id.* "Otherwise, a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document." *Id.* Therefore, although a court may not consider matters outside the pleadings on a motion to dismiss, documents properly introduced by a defendant " 'are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [the plaintiff's] claim.' " *Bowens v. Aftermath Entm't*, 254 F.Supp.2d 629 (E.D.Mich. 2003) (Gadola, J.) (quoting *Weiner*, 108 F.3d at 89).

Here, although Plaintiffs referred to the Development Agreement on numerous occasions in the Amended Complaint, Plaintiffs neglected to attach it to the pleading. As a result, Defendant moved to introduce the Development Agreement so the Court would have access to this dispositive document while resolving the Rule 12(b)(6) issues before the Court. *See Weiner*, 108 F.3d at 89. The Court granted this request on January 2, 2003, and Defendant subsequently introduced the Development Agreement. Accordingly, the Development Agreement is part of the pleadings, and the Court will consider it in adjudicating the present Motions as Motions to Dismiss under Rule 12(b)(6). *See* Fed. R.Civ.P. 10(c); Fed.R.Civ.P. 12(b); *Weiner*, 108 F.3d at 89; *Bowens*, 2003 WL 1725121, at *6.

### III. LEGAL STANDARD

Rule 12(b)(6) authorizes the district courts to dismiss any complaint that fails "to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). Rule 12(b)(6) affords a defendant an opportunity to test whether, as a matter of law, the plaintiff is entitled to legal relief even if

everything alleged in the complaint is true. *See Chaness & Simon, P.C., v. Simon*, 241 F.Supp.2d 774, 777 (E.D.Mich.2003) (Gadola, J.). In applying Rule 12(b)(6), the Court must presume all well-pleaded factual allegations in the complaint to be true and draw all reasonable inferences from those allegations in favor of the non-moving party. *See Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir.1993); *Chaness & Simon*, 241 F.Supp.2d at 777.

The Court will not, however, accord the presumption of truthfulness to any legal conclusion, opinion, or deduction, even if it is couched as a factual allegation. *See Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir.1987); *Chaness & Simon*, 241 F.Supp.2d at 777. The Court will not dismiss a cause of action under the Rule 12(b)(6) standard "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Chaness & Simon*, 241 F.Supp.2d at 777. Although the pleading standard is liberal, bald assertions and conclusions of law will not enable a complaint to survive a motion pursuant to Rule 12(b)(6). *See Chaness & Simon*, 241 F.Supp.2d at 777–78; *see also Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir.1996).

### IV. ANALYSIS

#### A. Motion to Dismiss Counts VII, VIII, and IX

■ "The law in Michigan is well-settled that an action in tort requires a breach of duty separate and distinct from a breach of contract." *Brock v. Consol. Biomed. Labs.*, 817 F.2d 24, 25 (6th Cir.1987) (citing *Haas v. Montgomery Ward & Co.*, 812 F.2d 1015 (6th Cir.1987); *Kewin v. Mass. Mut. Life Ins. Co.*, 409 Mich. 401, 295 N.W.2d 50 (1980); *Hart v. Ludwig*, 347 Mich. 559, 79 N.W.2d 895 (1956); *Brewster*

*v. Martin Marietta Aluminum Sales, Inc.*, 145 Mich.App. 641, 378 N.W.2d 558 (1985)). The parties do not dispute the law, but they do dispute how it should be applied in this case.

Defendant contends that Plaintiffs' three fraud claims (Counts VII, VIII, and IX) cannot be sustained because Plaintiffs cannot establish a breach of a legal duty that is separate and distinct from Defendant's contractual duties under the Development Agreement. Plaintiffs disagree. Plaintiffs maintain that the frauds allegedly committed by Defendant are based on legal duties independent of Defendant's contractual duties.

After a review of the terms of the Development Agreement and the allegations in the Amended Complaint, the Court agrees with Defendant. The operative allegations in Plaintiffs' fraud claims would not exist in the absence of the contracts between the parties; thus, such allegations cannot be maintained as tort-based claims under Michigan law. *See Bailey Farms, Inc. v. NOR–AM Chem. Co.*, 27 F.3d 188, 191–92 (6th Cir.1994) (quoting *Merchs. Publ'g Co. v. Maruka Mach. Corp. of Am.*, 800 F.Supp. 1490, 1493 (W.D.Mich.1992)); *Brock*, 817 F.2d at 25; *Heidtman Steel Prods., Inc. v. Compuware Corp.*, 168 F.Supp.2d 743, 751 (N.D.Ohio 2001) (applying Michigan law) (holding that fraud claims brought in conjunction with a breach of contract claim cannot be maintained where, but for the existence of the contract, there is no duty of disclosure).

Counts VII, VIII, and IX are premised on Defendant's purported misrepresentations and/or omissions concerning the development of DLC and certain "non-DLC" technology. However, any duties of disclosure that Defendant owed Plaintiffs were contractual duties created by the Development Agreement and related contracts. For instance, Count IX alleges that Defendant defrauded Plaintiffs by breaching "legal and equitable duties" that were owed to Plaintiffs when Defendant allegedly misrepresented its intention to pursue and/or use Plaintiffs' technology. Amend. Compl. at ¶¶ 169–72. Such an allegation is simply a rehash of Plaintiffs' earlier claims in the Amended Complaint that Defendant breached its obligation to "cooperate in the development of the Product" under the terms of the Development Agreement. *Id.* at ¶ 39. Moreover, in Count IX, Plaintiffs are asserting that Defendant committed fraud by breaching its duties of "trust and confidence." *Id.* at ¶ 169. Here again, such duties are founded in the contracts between the parties: Plaintiffs are simply alleging that Defendant breached certain contractual confidentiality provisions. Furthermore, this allegation is duplicative of Count II, in which Plaintiffs allege breach of confidentiality agreements. *See id.* at ¶¶ 110–11.

Plaintiffs raise four arguments in an attempt to avoid dismissal of their fraud claims. First, Plaintiffs contend that their discovery of certain non-DLC inventions occurred outside the boundaries of the Development Agreement. However, the extent of Plaintiffs' proprietary interest in the non-DLC technology as well as any dispute over its inventorship, ownership and/or use is governed by the Development Agreement. Paragraph 4.2 of the Development Agreement grants Defendant ownership of "all right, title, and interest (including patents, copyrights, mask work rights, trade secrets and any other intellectual property rights) in and to the results of the development of the Product." Dev. Agreem't at ¶ 4.2. The parties defined the word "Product" as all devices and all enhancements developed "for use in Laser and Inkjet printing components and/or used in the manufacture of Laser and Inkjet printing components which utilize the technology." *Id.* at ¶ 1.1 and Appx. A. Further, the parties agreed on a

brief and broad definition for the term "technology" using flexible and nonspecific language: any "[s]ynthesis [and]/or deposition by a QQC patented and/or trade secret process." *Id.* at Appx. A. Furthermore, Paragraph 4.2 included a catchall requiring Plaintiffs to "promptly disclose to [Defendant] any inventions, works of authorship or other intellectual property made or created in developing the Product or fulfilling its obligations under this Agreement." *Id.* at ¶ 4.2.

Therefore, according to Paragraph 4.2 and its corresponding broad definitions, the non-DLC technology was a direct result of Plaintiffs' work in developing the Product and/or fulfilling their obligations under the Development Agreement. Plaintiffs admitted as much in the Amended Complaint. *See* Amend. Compl. ¶¶ 56–73 (detailing how Plaintiffs discovered non-DLC solutions in the process of developing the Product and operating under the Development Agreement). For example, in Paragraph 60 of the Amended Complaint, Plaintiffs state that they prepared several inkjet samples with the non-DLC structure and method in combination with their improved DLC technology for Defendant's review and testing. *See id.* at ¶ 60. In addition, in Paragraph 62, Plaintiffs admit that they held a DLC meeting with Defendant, "in the context of their confidential relationship," and, at this DLC meeting, Plaintiffs disclosed the non-DLC technology to Defendant. *Id.* at ¶ 62. The inescapable conclusion to draw from this conduct is that Plaintiffs themselves were proceeding as if the non-DLC technology was within the scope of the parties' contractual relationship. Consequently, Plaintiffs' claims of wrongdoing concerning the non-DLC technology do not support tort claims that are separate and distinct from their contract claims.

Second, Plaintiffs argue that their development of the non-DLC technology, and thus Defendant's alleged wrongdoing concerning this technology, all transpired after the termination of the Development Agreement. The Amended Complaint and the Development Agreement belie this contention. According to the Amended Complaint, the relevant non-DLC developments occurred in November 1998, *see id.* at ¶¶ 59, 61, 64, 70, and 72, and the Development Agreement was terminated on February 23, 1999, *see id.* at 83.

Despite these admissions in the Amended Complaint, Plaintiffs claim that two purchase orders in October and November 1998 had the effect of superseding the Development Agreement. However, Paragraph 8.14 of the Development Agreement specifically states that the Development Agreement takes "precedence" over any terms contained in purchase orders. Dev. Agreem't at ¶ 8.14. Furthermore, even if a purchase order superseded the Development Agreement, such a purchase order is still a contract with contractual duties, which would limit Plaintiffs' ability to establish the existence of independent legal duties to support their fraud claims.

Third, Plaintiffs maintain that, because certain DLC inventions predated the Development Agreement, Defendant's purported wrongdoing regarding these preexisting DLC items are outside the scope of the parties' contractual relationship and are independent grounds for the fraud claims. This argument is contradicted by Paragraph 4.1 of the Development Agreement, which regulates the parties "preexisting rights." *See* Dev. Agreem't at ¶ 4.1. Paragraph 4.1 contemplates the very situation in which Plaintiffs' pre-existing intellectual property is used "in the Product or in fulfilling [Plaintiffs'] obligations under [the Development] Agreement." *Id.* Therefore, any dispute anent the use of pre-existing intellectual property should be resolved according to the

terms of the Development Agreement. As a result, Plaintiffs' pre-existing property allegations do not support their claims of tortious fraud.

Finally, Plaintiffs argue that their fraud claims should not be dismissed because the claims are properly brought as alternative and/or inconsistent causes of action. *See* Fed.R.Civ.P. 8(e)(2). This argument is misguided and irrelevant. The issue before the Court is not whether the fraud claims are inconsistent alternatives to Plaintiffs' contract claims. Rather, the issue is whether Plaintiffs' fraud claims fail as a matter of law. *See* Fed.R.Civ.P. 12(b)(6). For example, in *Durant v. ServiceMaster Co.*, a case cited by Plaintiffs, the Court allowed a breach of contract claim and an unjust enrichment claim to coexist in the same complaint because the plaintiffs had grounds to prevail on one claim or the other. 159 F.Supp.2d 977, 983 (E.D.Mich.2001) (Gadola, J.). Here, however, the existence of the parties' contractual relationship precludes any possibility of Plaintiffs' prevailing on their fraud claims.

In conclusion, assuming the truth of the factual allegations in the Amended Complaint, Plaintiffs cannot establish a violation of legal duty that is separate and distinct from Defendant's contractual duties; thus, under Michigan law, Counts VII, VIII, and IX fail to state a claim upon which relief can be granted. *See* Fed. R.Civ.P. 12(b)(6); *Bailey Farms*, 27 F.3d at 191–92; *Brock*, 817 F.2d at 25; *Heidtman Steel*, 168 F.Supp.2d at 751; *Merchs. Publ'g*, 800 F.Supp. at 1493. Accordingly, the Court will dismiss Counts VII, VIII, and IX.

### B. Motion to Dismiss Counterclaim

■ In its Counterclaim, Defendant argues that it has fully performed under the Development Agreement and related contracts and, as a result, is entitled to the benefit of its bargain. Defendant seeks a declaration to that effect from this Court. Such a declaration will, according to Defendant (1) quiet Plaintiffs' attacks on Defendant's title to its intellectual property, (2) properly assign ownership of the intellectual property that forms the basis of Plaintiffs' Amended Complaint, and (3) determine the ownership of any intellectual property that is governed by the Development Agreement and that Plaintiffs have not disclosed to Defendant. Plaintiffs request that the Court dismiss Defendant's declaratory judgment claim and advance four arguments in support of this request.

First, despite the fact that Plaintiffs have sued Defendant over the intellectual property arising out of the Development Agreement, Plaintiffs claim that Defendant's Counterclaim lacks an actual or threatened injury necessary to establish the existence of an "actual controversy" as required by the Declaratory Judgment Act. 28 U.S.C. § 2201(a).[1] Plaintiffs' argument lacks merit. To satisfy § 2201(a)'s actual controversy requirement, the parties' conflicting contentions must present a dispute that is substantial and concrete and not merely hypothetical or abstract. *See Kardules v. City of Columbus*, 95 F.3d 1335, 1343–44 (6th Cir.1996); *Mich. State Chamber of Commerce v. Austin*, 788 F.2d 1178, 1184 (6th Cir.1986). Both Plaintiffs and Defendant claim ownership of the same intellectual property; thus, the presence of conflicting legal interests is unquestionable. The Counterclaim places

---

1. Section 2201(a) states that "[i]n a case of actual controversy within its jurisdiction, .. any court of the United States ... may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a).

the interpretation of the Development Agreement and the ownership of the intellectual property rights in issue. *See Panhandle E. Pipe Line Co. v. Mich. Consol. Gas Co.*, 177 F.2d 942, 944 (6th Cir.1949) ("where there is controversy as to the meaning and effect of a written contract[,] interpretation may be sought from and made by the declaratory judgment"). Accordingly, the Counterclaim presents a concrete controversy under § 2201(a) for this Court to adjudicate.

Second, Plaintiffs contend that Defendant lacks standing to bring its Counterclaim. In other words, Plaintiffs allege that Defendant does not have an injury that can be redressed by the Court. Again, Plaintiffs' argument is completely devoid of merit. Defendant is a party to the Development Agreement and claims ownership of intellectual property that arose pursuant to that contract. Generally, a party to a contract has standing to litigate the rights and obligations arising out of the contract. *See Almond v. Capital Props., Inc.*, 212 F.3d 20, 24 (1st Cir. 2000) ("A party to a contract ordinarily has 'standing' to seek enforcement of a contractual promise made to it by another party."); *Rottlund Homes of N.J., Inc. v. Saul, Ewing, Remick & Saul, L.L.P.*, 243 F.Supp.2d 145, 153 (D.Del.2003) ("a party to a contract has standing to enforce a contract"); *GDF Int'l, S.A. v. Associated Elec. & Gas Ins. Servs. Ltd.*, No. 02–02916, 2003 WL 926790, at *2 (N.D.Cal. Mar.4, 2003); *Morial v. U.S. Dep't of Housing & Urban Dev.*, No. 01–3820, 2002 WL 246334, at *3 (E.D.La. Feb.20, 2002) ("As a party to a contract, one usually has standing when a dispute arises out of that contract."). Beyond being a party to a contract, Defendant faces real and immediate harms: (1) Plaintiffs have allegedly failed, according to Defendant, to fully perform under and abide by the Development Agreement and (2) Plaintiffs are attacking Defendant's ownership of intellectual prop-

erty. Defendant seeks a declaratory judgement to redress these injuries by definitively resolving the disputes between the parties arising out of the Development Agreement. Therefore, Defendant has standing to bring its Counterclaim.

Third, Plaintiffs maintain that Defendant has not satisfied the five-factor test a district court must consider in deciding whether to exercise its discretionary jurisdiction over a declaratory action. These five factors are: "(1) whether the judgment would settle the controversy; (2) whether the declaratory judgment action would serve a useful purpose in clarifying the legal relations at issue; (3) whether the declaratory remedy is being used merely for the purpose of 'procedural fencing' or 'to provide an arena for a race for res judicata'; (4) whether the use of a declaratory action would increase the friction between our federal and state courts and improperly encroach on state jurisdiction; and (5) whether there is an alternative remedy that is better or more effective." *N. Ins. Co. of N.Y. v. Addison Prods., Inc.*, 148 F.Supp.2d 859, 861 (E.D.Mich.2001) (Gadola, J.) (quoting *Scottsdale Ins. Co. v. Roumph*, 211 F.3d 964, 968 (6th Cir.2000)). Plaintiffs' argument again fails. Each of these five factors weighs in Defendant's favor.

The Court's discussion *supra*, holding that the Counterclaim presents a concrete controversy under § 2201(a) for this Court to adjudicate and that Defendant has standing to bring the Counterclaim, demonstrates that the first two factors favor Defendant. Further, Plaintiffs initiated this civil action, and they selected this venue. Consequently, it cannot be said that Defendant was attempting to win a race to the courthouse in bringing its declaratory action. Therefore, the third factor favors Defendant. Additionally, at the heart of this action are rights to patents

issued by the United States, and, as a consequence, any concerns of federal-state friction and/or federal encroachment are minimal. Thus, the fourth factor favors Defendant.

Moreover, there is no better or more effective alternative remedy available to Defendant. Only by obtaining a declaration as to all of the intellectual property rights arising out of the Development Agreement will Defendant obtain full and final peace with respect to the ownership of its intellectual property. Even if Defendant ultimately prevailed on all of Plaintiffs' claims in the Amended Complaint, Defendant would still not be made whole. For instance, adjudicating Plaintiffs' claims will not resolve the issue of whether Plaintiffs have disclosed all "inventions, works of authorship, or other intellectual property made or created in developing the Product or fulfilling [Plaintiffs'] obligations under the [Development] Agreement." Dev. Agreem't at ¶ 4.2. Thus, there is no better or more effective manner for remedying Defendant's situation than through a declaratory judgment. Therefore, all five declaratory judgment factors weigh in Defendant's favor.

■ Finally, Plaintiffs attack the Counterclaim on fair notice grounds. That is, they complain that the Defendant has not pled enough facts to support a cognizable claim. Plaintiffs' argument is misguided. Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that pleadings, such as a counterclaim, merely provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R.Civ.P. 8(a)(2). A counterclaim is sufficient if it provides "fair notice of what the claim is and the ground upon which it rests." *Kundrat v. Halloran*, 145 F.Supp.2d 865, 868–69 (E.D.Mich.2001) (Gadola, J.) (citing Fed.R.Civ.P. 8(f) ("All pleadings shall be so construed as to do substantial justice.")); *see also Robinson*

*v. Twp. of Redford*, 48 Fed. Appx. 925, 927 (6th Cir.2002) ("Although 'a complaint need not set down in detail all the particularities of a plaintiff's claim,' the complaint must give the defendant 'fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Westlake v. Lucas*, 537 F.2d 857, 858 (6th Cir.1976))); *Conn. Indem. Co. v. Spartan Travel, Inc.*, No. 1:00–844, 2001 U.S. Dist. LEXIS 4558, at *4–5 (W.D.Mich. Mar. 25, 2001) ("Defendants' counterclaim gives fair notice of a viable claim that could conceivably be supported by facts that could be presented consistent with the allegations of the counterclaim. Whether or not Defendants will ultimately be able to come forward with facts to support those allegations is not a proper issue for this Court's consideration in a Rule 12(b)(6) motion to dismiss."). "The central purpose of the modern short and plain statement standard is to give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests, and not much more." *RTC Mortgage Trust 1994 N–1 v. Fidelity Nat'l Title Ins. Co.*, 981 F.Supp. 334, 342 (D.N.J.1997) (citing, *inter alia, Conley*, 355 U.S. at 47, 78 S.Ct. 99). Furthermore, the liberal pleading standard embodied in Rule 8(a)(2) relies on discovery, for example, as a mechanism for fleshing out additional facts to support or refute a party's claim. *See Conley*, 355 U.S. at 47–48, 78 S.Ct. 99; *Conn. Indem.*, 2001 U.S. Dist. LEXIS 4558, at *4–5; *RTC Mortgage*, 981 F.Supp. at 342; *Aamco Automatic Transmissions, Inc. v. Tayloe*, 368 F.Supp. 1283, 1287 (E.D.Pa.1973) ("pretrial discovery can supply all necessary factual information").

In this case, Defendant's Counterclaim provides ample and legally sufficient notice to Plaintiffs of the claim against them. Defendant cites the Development Agreement and quotes Paragraph 4.2, the most

relevant contract provision to its case. *See* Counterclaim at ¶¶ 5–9. As to which intellectual property is at issue in the Counterclaim, Defendant stated that *all* intellectual property arising from the Development Agreement is at issue. *See id.* at ¶ 9. Further, Defendant asks the Court to declare that Defendant has fully performed under the Development Agreement and to enforce the Development Agreement accordingly. *See id.* at ¶¶ 6–7. *Cf. Aamco*, 368 F.Supp. at 1287 ("As defendant has alleged a contract, a breach of that contract, resultant damages and, inferentially, performance of his contractual duties, he has satisfied the requirements of Rule 8(a)(2)"). Therefore, Defendant's Counterclaim satisfies the fair notice requirements of Rule 8(a)(2), and, in sum, Plaintiffs' Motion to Dismiss is totally without merit. Thus, the Court will deny Plaintiffs' Motion.

## V. CONCLUSION

**ACCORDINGLY, IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss Counts VII, VIII, and IX of Plaintiffs' Amended Complaint [docket entry 8] is **GRANTED**.

**IT IS FURTHER ORDERED** that Counts VII, VIII, and IX of the Amended Complaint are **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion to Dismiss Counterclaim [docket entry 14] is **DENIED**.

**SO ORDERED.**